## FELSENHELD v. UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 205. Argued April 7, 8, 1902.—Decided May 19, 1902.

It is within the power of Congress to prescribe that a package of any article which it subjects to a tax, and upon which it requires the affixing of a stamp, shall contain only the article which is subject to the tax.

The coupons described in the statement of facts are within the prohibitions of the act of July 24, 1897, 30 Stat. 151.

Neither question three or question four presents a distinct point or proposition of law, and, as each invites the court to search the entire record, the court declines to answer them.

THIS was a proceeding commenced in the Circuit Court of the United States for the District of West Virginia, seeking a forfeiture of certain tobacco. Attachment and monition were duly issued. The case was submitted upon an agreed statement of facts, and a judgment of forfeiture was entered. Whereupon the case was taken on error to the Circuit Court of Appeals for the Fourth Circuit, which certified four questions.

The facts as found in the agreed statement are these: At times a practice prevailed among manufacturers of tobacco of placing in their packages of tobacco other articles of intrinsic value, such as penknives, etc.   On November 4, 1891, the Commissioner of Internal Revenue issued this circular:

"Manufacturers of tobacco, in marking the gross, tare and net weight of packages of tobacco, should include in the gross the full weight of the package and all its contents.   The tare should include the weight of the pail, lining, covering, etc., so that the tare subtracted from the gross will give the net weight of the tobacco contained therein and expressed by the stamp. Great care should be exercised by the collectors to prevent foreign articles of any kind being included in any of the packages. A practice has grown up, which seems to be on the increase, by which manufacturers have included in statutory packages many foreign articles.   This practice should be discontinued. A package of tobacco means a package containing tobacco and nothing else."

On July 24, 1897, Congress passed what is known as the Dingley Bill.   30 Stat. 151, c. 11.   The third clause of the tenth section thereof amended section 3394 of the Revised Statutes so as to read:

"None of the packages of smoking tobacco or fine-cut chewing tobacco and cigarettes prescribed by law shall be permitted to have packed in, or attached to, or connected with them, any article or thing whatsoever, other than the manufacturers' wrappers and labels, the internal revenue stamp and the tobacco or cigarettes, respectively, put up therein, on which tax is required to be paid under the internal revenue laws; nor shall there be affixed to, or branded, stamped, marked, written, or printed upon, said packages, or their contents, any promise or offer of, or any order or certificate for, any gift, prize, premium, payment or reward."

On the 23d day of September, in the year 1898, at the city of Wheeling, in the district aforesaid, the internal revenue collector of the United States seized 1440 packages of chewing and smoking tobacco known by the name and brand of Merry World tobacco, weighing one and two thirds ounces to the

package, and having a total weight of 150 pounds, and afterwards, on the 5th day of April, in the year 1899, J. K. Thompson, the marshal of the United States for the said district of West Virginia, in pursuance of the attachment and monition appearing in the record, took into his possession the said 1440 packages of tobacco, and now holds the same in his possession.

At the time of the seizure by the collector there was in each of the packages a small slip of paper called a coupon, with printed words and figures on both sides thereof, which coupon had been placed within such package at the time when it was packed in the manufactory and prepared for sale. These coupons were all alike, and on each of them were the following words and figures, that is to say, upon one side thereof the following words and figures:

*" Merry World Tobacco Coupon.*

" With the tobacco packed herewith the purchaser has bought a definite share in any of the articles mentioned on the other side of this voucher.

" We will send you postpaid any or all of the articles listed on the other side for the number of coupons as stated.

" Mail these coupons to the Merry World Tobacco Co., Wheeling, W. Va., stating number of coupons sent, articles wanted, your name, street and number, city or town, county and State."

And on the other side the following words and figures:

" Will send you postpaid for 20 coupons, 1 picture, $14 \times 28$, handsome water-color fac-simile, 12 subjects.

" 30 coupons, 1 picture, $20 \times 24$, fine pastel fac-simile, 12 subjects.

" 40 coupons, 1 picture, $20 \times 30$, beautiful Venetian scenes, 4 subjects.

" 50 coupons, 1 picture, $22 \times 28$, elegant water-color gravures, 2 subjects.

" 60 coupons, 1 picture, $22 \times 28$, magnificent water-color gravures, 4 subjects.

" No advertising or lettering on any of the above. Such excellent works of art have never before been offered, except

through dealers, at very high prices. They are suitable decorations for the most elegant home, and to be appreciated must be seen. See descriptive catalogue mailed on application. Order by subjects.

"20 coupons, 1 book of Popular Seaside Library, 300 titles by favorite authors.

"50 coupons, 1 cloth-bound book, 160 titles by eminent authors. Catalogues of our books mailed on application.

"25 coupons, 1 scarf-pin solid sterling silver.

"25 coupons, 1 pipe, genuine French briar.

"40 coupons, 1 rubber tobacco pouch, self-closing.

"75 coupons, 1 elegant pocketbook, finest quality leather, gent's or ladies.'

"70 coupons, 1 pocket-knife, first quality, American manufacture, razor steel hand forged, finely tempered blades. Stag handle. Your choice between jack-knife or pen-knife.

"95 coupons, 1 fine razor, highest grade steel, hollow ground.

"40 coupons, 1 bicycle lock, nickeled, gent's sprocket or lady's with chain.

"150 coupons, 1 cyclometer, 1000 miles repeating. In ordering state size of wheel.

"550 coupons, 1 excellent open-face watch. Guaranteed without qualification. Has all improvements up to date. It will wear and perform well for a lifetime if only ordinarily cared for.

"Illustrated catalogue for the above mailed upon application."

This coupon is printed on thin paper, is of inappreciable weight, is without any intrinsic value in itself, and has upon it no picture of any kind and does not affect, in any way, the ascertaining of the proper tax payable upon the package or interfere in any way with the collection of such tax. The value of the five cases of tobacco of 288 packages each is and was when they were seized as aforesaid fifty-four dollars ($54.00). The packages were owned by Emanuel Felsenheld, who at the proper time intervened and claimed the property.

The following are the questions certified by the Court of Appeals:

"First. Whether the third clause of the tenth section of the act of Congress of July 24, 1897, if the prohibition of that statute be applied to the coupons described in the foregoing statement of facts, was in accordance with or in conflict with the Constitution of the United States?

"Second. Whether, if the said section be properly construed, the coupons described in the foregoing statement of facts are within its prohibition?

"Third. Upon the facts stated, was the seizure set forth in the information of the packages of Merry World tobacco therein described, or was the judgment of forfeiture rendered in this case justified under section 3453 of the Revised Statutes?

"Fourth. Upon the facts stated, was the seizure set forth in the information of the packages of Merry World tobacco therein described or was the judgment of forfeiture rendered in this case justified under section 3456 of the Revised Statutes?"

*Mr. Henry M. Russell* and *Mr. John De Witt Warner* for plaintiff in error.

*Mr. Charles J. Faulkner* and *Mr. Assistant Attorney General Beck* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The first two questions may be considered together. There can be no doubt that the coupon comes within the letter of the statute. That prohibits packing in, attaching to or connecting with the package "any article or thing whatsoever" other than certain specified labels and stamps. If Congress intended excluding from the package absolutely everything not named, it used the words to express that intent, and could not have used any more strongly indicative of it. "Any article or thing whatsoever" is a descriptive clause as broad and comprehensive as could be selected, and since that clause is used, followed by an express exception, the coupon must come within the exception or else it falls within the comprehensive clause. The debatable question arises upon the fact stated in the agreement

that the coupon is printed on thin paper of inappreciable weight, without intrinsic value, and does not affect in any way the ascertaining of the proper tax payable upon the package, or interfere in any way with the collection of such tax. There seems to have been a discussion in the internal revenue department whether Congress could rightfully prevent the insertion in the package of an article whose presence in no way affected the collection of the internal revenue tax, and therefore on the theory that Congress could not have intended an unconstitutional provision, whether the act should be construed as including such an article.

In the internal revenue legislation Congress has not simply prescribed that certain articles shall pay a tax, but has provided a series of rules and regulations for the manufacture and sale of such articles, including therein directions as to the size and form of packages, and such other matters as in its best judgment were necessary or advisable for the purposes of effectually securing the payment of the tax imposed. Now the contention is that the courts may supervise this system of rules and regulations, and if they find a provision which, in their judgment, in no way secures or facilitates the proper collection of the tax they may strike it down as something beyond the power of Congress. It is said that the only matter in which the National Government is concerned is the tax; that it is in no manner responsible for what goes into the commercial world covered by its stamp; that it has no police power, no duty of caring for the health or safety of citizens or others who buy articles upon which its stamp is placed; that it does not guarantee either quantity or quality, and, in short, that its power is limited to such provisions as are essential or helpful in the collection of the tax.

It may be conceded that the Government's stamp is not a guaranty of quantity or quality, and that no responsibility attaches to it, although the manufacturer puts into the packages less than the specified quantity of goods or goods of inferior quality. But does it follow that the Government has no power to prescribe that the packages which it stamps, upon which it collects a tax, shall contain the very articles and only the arti-

cles which it purports to tax and which its stamp certifies that it has taxed? Take the matter of tobacco; can it be that a manufacturer may fill packages purporting to be of tobacco with half tobacco and half sawdust, and the government can pass no valid statute to prevent it? If the manufacturer is willing to pay a full tobacco tax on this package, half tobacco and half sawdust, must the Government take the money, affix its stamp, and thus in effect certify that the contents are that which it has imposed a tax upon? Manufactured goods are not necessarily sold in this country, but may be shipped to other countries and sold there, and can it be that the stamp of this Government is absolutely worthless as an assurance that that which is within the package is the article which the Government purports to have taxed? It is one thing to say that the Government's stamp is not a guarantee of either quantity or quality, and that no liability attaches to it if the manufacturer imposes upon his customers by inserting something which is not that which is stamped, but it is a very different thing to hold that the Government is absolutely powerless to legislate so as to protect the customer and prevent the manufacturer from putting within the package anything but the article which it proposes to tax. Whatever courts may rule as to the constitutional limits of the power of Congress the great majority of people here and elsewhere will believe in and rely upon the truthfulness of a certificate made by the Government, and will be shocked to be told that it means nothing to them, but only money to the Government.

It seems to us that, in the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe any rule or regulation which is not in itself unreasonable; that it is a perfectly reasonable requirement that every package of such goods should contain nothing but the article which is taxed; that in order to make such a regulation constitutional it is not necessary that there be either expressly or by implication an exception of those articles or things which by virtue of their minute size or weight do not apparently affect the collection of the tax. Congress may rightfully make the prohibition absolute and the

courts may not draw a line between the foreign substance, which is trifling in size or weight, and that which is of appreciable size and weight, and hold in reference to a particular package the act valid if the size or weight is appreciable and invalid if it is not.

Among the regulations prescribed by Congress in its internal revenue legislation are many which are purely arbitrary, or at least the necessity of which for the collection of taxes is not apparent. For instance, Congress has directed (Rev. Stat. 3392) that cigars shall be put up in boxes containing twenty-five, fifty, one hundred, two hundred and fifty, or five hundred each. There is no special efficacy in either of these numbers. Boxes containing fifteen, thirty or sixty cigars would apparently afford just the same facilities for taxation, and yet can there be a doubt that Congress may make such a rule and compel each manufacturer to abide thereby? It has a right to select, and when it has made a selection, although there may be no special reasons for the specific numbers, and they are in fact arbitrarily selected, it may for purposes of uniformity compel compliance with the rule. So, if it should prescribe that at least nine tenths of every package, purporting to be a package of a particular kind of tobacco, and subject to a special tax, should be that particular kind of tobacco, would the manufacturer be permitted to make one third of the contents of some other kind of tobacco or any other substance? The proportion might be arbitrarily selected, it is true, but is it not clearly within the power of Congress in its regulations to make such arbitrary selection? And if it may say that not less than nine tenths of the contents shall be that particular tobacco, the subject of the tax, is it any the less within the power of Congress to prescribe that there shall be nothing in the package save that tobacco?

Indeed, the admission that the Government may require that the contents of a package shall be partly of the goods which it taxes is a concession that it may also require the entire contents to be such goods.

There is in this statute no trespass upon the manufacturer's right to fully advertise his goods or to offer with the utmost freedom inducements for their purchase. He can put into the

box in which he ships his packages all the advertising material he sees fit. That which is required is that each separate package shall be in its entirety a package of tobacco, and only tobacco. Beyond that the manner in which he shall sell, or the advertisement he shall make of his tobacco after the tax has been paid, and the packages have been stamped, is a matter for him to determine.

We are of opinion that it is within the power of Congress to prescribe that a package of any article which it subjects to a tax, and upon which it requires the affixing of a stamp, shall contain only the article which is subject to the tax.

Questions three and four do not come within the rules respecting the certification of questions by the Court of Appeals. Those rules were thus stated by the present Chief Justice in *United States* v. *Union Pacific Railway Company*, 168 U. S. 505, 512:

"It is settled that the certification provided for in sections five and six of the Judiciary Act of March 3, 1891, c. 517, 26 Stat. 826, is governed by the rules laid down in respect of certificates of division under the Revised Statutes. *Columbus Watch Company* v. *Robbins*, 148 U. S. 266; *Maynard* v. *Hecht*, 151 U. S. 324; *Graver* v. *Faurot*, 162 U. S. 435; *Cross* v. *Evans*, 167 U. S. 60.

"By those rules, as repeated in these cases from prior decisions, 'each question had to be a distinct point or proposition of law, clearly stated, so that it could be distinctly answered without regard to the other issues of law in the case; to be a question of law only, and not a question of fact, or of mixed law and fact, and hence could not involve or imply a conclusion or judgment upon the weight or effect of testimony or facts adduced in the case; and could not embrace the whole case, even where its decision turned upon matter of law only, and even though it was split up in the form of questions.' *Fire Insurance Association* v. *Wickham*, 128 U. S. 426; *Dublin Township* v. *Milford Savings Institution*, 128 U. S. 510."

Neither of these questions presents a distinct point or proposition of law. Each invites us to search the entire record, and in effect determine whether the judgment of the District Court

should be affirmed or reversed. But as settled in the cases referred to in the last quotation, the Court of Appeals cannot thus send up a whole case for consideration and disposition.

We, therefore, answer the second question by saying that the coupons described are within the prohibition of the statute; the first, that the statute so construed is not in conflict with the Constitution of the United States. The third and fourth we decline to answer.

MR. JUSTICE GRAY and MR. JUSTICE WHITE did not hear the argument and took no part in the decision of this case.

MR. JUSTICE PECKHAM dissented.