## BLUNT v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit. July 24, 1918. On Petition for Rehearing, December 13, 1918.)

### No. 2599.

1. CONSTITUTIONAL LAW ⊜═70(3)—POWERS OF COURT—WISDOM OF LEGISLATION.

In case of a revenue law, it is beyond the province of the courts to inquire into its wisdom, justice, or efficiency, the motives that led to its enactment, or its incidental effect as a police measure.

2. INTERNAL REVENUE ⊜═2—HARRISON NARCOTIC ACT—CONSTITUTIONALITY.

The provision of Harrison Act, § 2 (Comp. St. § 6287h), after providing that specified narcotic drugs shall be sold only on written order forms obtained from the Internal Revenue Department, that "it shall be unlawful for any person to obtain by means of said order forms any of the aforesaid drugs for any purpose other than the use, sale, or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession," is unconstitutional, as not

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

within the taxing power of Congress, which includes no right to make any specific use of a tax-paid article unlawful.

**3. POISONS ⟐⟐2—HARRISON NARCOTIC ACT—REGISTRATION OF PHYSICIANS AND DEALERS.**

Rev. St. § 3236 (Comp. St. § 5959), providing that, whenever more than one pursuit or occupation subject to internal revenue tax are carried on in the same place by the same person, the tax shall be paid for each, requires a separate registration under Harrison Narcotic Act (Comp. St. §§ 6287g–6287q) by a physician who dispenses and is also a dealer in narcotic drugs, and payment of a separate tax for each; the same is also required by the regulations of the Commissioner of Internal Revenue.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Criminal prosecution by the United States against Arthur L. Blunt. Judgment of conviction, and defendant brings error. Reversed in part, and affirmed in part.

Hope Thompson, of Chicago, Ill., for plaintiff in error.

Charles F. Clyne and Benjamin P. Epstein, both of Chicago, Ill., for the United States.

Before BAKER and MACK, Circuit Judges.

MACK, Circuit Judge. Writ of error to review a judgment and sentence against plaintiff in error, Arthur L. Blunt, under an indictment charging him with a violation of sections 1 and 2, Harrison Act (Act Dec. 17, 1914, c. 1, 38 Stat. 785 [Comp. St. §§ 6287g, 6287h]) copied in substance as a footnote. The first 12 counts are substantially identical, except that each count refers to a separate transaction. The offense therein charged was that the defendant, a practicing physician, in Chicago, and one who dispensed and distributed certain derivatives of opium, and who had registered his name and place of business with the collector of internal revenue, and had paid to the collector the special tax as required by law, unlawfully and feloniously obtained, by means of order forms theretofore issued by the Commissioner of Internal Revenue and sold to the defendant by the Comsioner, certain quantities of morphine sulphate—

"for a purpose other than the use or distribution thereof by him, the said Arthur L. Blunt, in the legitimate practice of his profession as such physician, that is to say, for the sale by him of such morphine sulphate to persons who were not patients being treated in good faith by him, the said Arthur L. Blunt, as such physician, and for sale by him to other persons not in pursuance of written orders of such other persons or forms issued in blank for that purpose by said Commissioner of Internal Revenue."

The fourteenth count charges that the defendant, as a dealer, unlawfully and feloniously sold to Thomas Dean 2,000 grains of morphine sulphate, without having registered as a dealer and without having paid the special tax as such dealer.

The sentence imposed was penitentiary imprisonment for five years on each of counts 1 to 12, inclusive, and count 14, the sentences to run concurrently, and a fine in the sum of $1,000 upon each of the counts 1 to 12, inclusive.

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The evidence showed that the defendant was a licensed physician, with offices at 9 West Harrison street, Chicago, Ill.; that he had been practicing medicine for many years; that on July 1, 1916, he registered his name and place of business as a physician with the collector of internal revenue of the United States for the First internal revenue district of Illinois, and paid the special tax. He did not file a separate registration setting out that he was a "dealer" in the drugs in question, and did not pay a separate tax as a "dealer."

After being so registered, he purchased from the collector a number of order forms, issued in accordance with the provisions of the act, and by using them obtained quantities of morphium and other drugs. These he dispensed to various drug addicts who came to his office for treatment for the drug habit. He kept a record of the name and address of each person treated, and indicated in his record the daily allowance of the drug to each such person. He did not always enter in his books the exact amount dispensed to an addict on a given day; in some cases addicts received sufficient drugs to supply their usual allowance for more than one day, and on such occasions the defendant marked in his books the proportionate amount for each of such days. In one case a patient secured sufficient amount to cover several days, urging as his reason that he feared he could not get it later on account of government intervention.

The fourteenth count is based upon a sale of 2,000 grains of drugs to a government secret agent, who was being treated as an addict and was registered as a patient, on his representation that he was about to leave the city and required that quantity to sustain him on his trip, or until a cure was effected.

1. As to the first 12 counts, it is necessary to consider only the principal contention of plaintiff in error, that the last paragraph of section 2 of the act (italicized in footnote),[1] is unconstitutional.

---

[1] Section 1. That every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on: Provided, that the office, or if none, then the residence of any person shall be considered for the purpose of this act to be his place of business. At the time of such registry and on or before the first day of July, annually thereafter, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any of the aforesaid drugs shall pay to the said collector a special tax at the rate of $1 per annum:

   *     *     *     *     *     *     *     *     *     *

*It shall be unlawful for any person required to register under the terms of this act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the aforesaid drugs without having registered and paid the special tax provided for in this section.*

   *     *     *     *     *     *     *     *     *     *

All provisions of existing law relating to special taxes, so far as applicable, including the provisions of section thirty-two hundred and forty of the Revised Statutes of the United States are hereby extended to the special tax herein imposed.

That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all needful rules and regulations for carrying the provisions of this act into effect.

Sec. 2. That it shall be unlawful for any person to sell, barter, exchange,

In view of United States v. Jin Fuey Moy, 241 U. S. 394, 36 Sup. Ct. 658, 60 L. Ed. 1061, Ann. Cas. 1917D, 854, it is no longer open to question that the Harrison Act is to be construed as a revenue law and considered as a revenue measure, and not as in any sense a regulation of commerce, whether foreign or interstate.

[1] If an act is in fact a revenue law, it is beyond the province of the courts to inquire into its wisdom, justice or efficiency, the motives that led to its enactment, or its incidental effect as a police measure. The regulation of private morals, the suppression of frauds upon the public, or the protection of industry that may result from a revenue law, will not change in character or invalidate it, if it be otherwise constitutional. McCray v. U. S., 195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561. And in the exercise of a power granted to it, whether it be that of taxation as in Felsenheld v. U. S., 186 U. S. 126, 22 Sup. Ct. 740, 46 L. Ed. 1085, sustaining the constitutionality of the italicized section of the clause of the Dingley Tariff Act (Act July 24, 1897, c. 11, § 10, 30 Stat. 206) copied as footnote,[2] or

---

or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue.

 *  *  *  *  *  *  *  *

Nothing contained in this section shall apply—

(a) To the dispensing or distribution of any of the aforesaid drugs to a patient by a physician, dentist, or veterinary surgeon registered under this act in the course of his professional practice only: Provided, that such physician, dentist, or veterinary surgeon shall keep a record of all such drugs dispensed or distributed, showing the amount dispensed or distributed, the date, and the name and address of the patient to whom such drugs are dispensed or distributed, except such as may be dispensed or distributed to a patient upon whom such physician, dentist or veterinary surgeon shall personally attend; and such record shall be kept for a period of two years from the date of dispensing or distributing such drugs, subject to inspection, as provided in this act.

 *  *  *  *  *  *  *  *

(d) The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall cause suitable forms to be prepared for the purposes above mentioned, and shall cause the same to be distributed to collectors of internal revenue for sale by them to those persons who shall have registered and paid the special tax as required by section one of this act in their districts, respectively. * * * The price at which such forms shall be sold by said collectors shall be fixed by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, but shall not exceed the sum of $1 per hundred.

* * * *It shall be unlawful for any person to obtain by means of said order forms any of the aforesaid drugs for any purpose other than the use, sale, or distribution thereof by him in the conduct of a lawful business in said drugs or in the legitimate practice of his profession.*

[2] None of the packages of smoking tobacco and fine-cut chewing tobacco and cigarettes prescribed by law shall be permitted to have packed in, or attached to, or connected with, them, any article or thing whatsoever, other than the manufacturer's wrappers and labels, the internal revenue stamp and the tobacco or cigarettes respectively, put up therein, on which tax is required to be paid under the internal revenue laws; nor shall there be affixed to, or branded, stamped, marked, written, or printed upon, said packages, or their contents, any promise or offer of, or any order or certificate for, any gift, prize, premium, payment, or reward.

that of regulating commerce, as in Hoke v. U. S., 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905, sustaining the constitutionality of the White Slave Traffic Act of June 25, 1910, c. 395, 36 Stat. 825 (Comp. St. §§ 8812–8819), or in Hipolite Egg Co. v. U. S., 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, sustaining the constitutionality of the Pure Food Act (Act June 30, 1906, c. 3915, 34 Stat. 768 [Comp. St. §§ 8717–8728]), Congress may adopt "not only means necessary but convenient to its exercise and the means may have the quality of police regulations."

And in the Felsenheld Case it was held to be within the power of Congress to keep the package of tobacco to which a stamp was affixed to indicate payment of the federal tax on the tobacco, free from extraneous articles, such as prize or premium coupons, because, as Justice Brewer said, the government has the—

"power to prescribe that the packages which it stamps, upon which it collects a tax, shall contain the very articles and only the articles which it purports to tax and which its stamp certifies that it has taxed."

[2] It does not, however, follow from any of these cases or from the principles underlying them, that because Congress may tax any article regardless of whether or not it be a legitimate article of interstate commerce, it may enact an intrastate prohibition law as to any such article. Its power under article 8, cl. 1, of the Constitution, is only to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States; not to regulate taxation throughout the land. And while a power to regulate interstate commerce may include the right to prohibit such interstate commerce as may be deemed harmful (Lottery Case, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492; Hoke Case, supra [but see Hammer v. Dagenhart (June 3, 1918), 247 U. S. 251, 38 Sup. Ct. 529, 62 L. Ed. 1101]), the power to lay taxes on an article includes no right to make any specific use of such tax-paid article unlawful.

This, however, is the sole purpose and intent of the last clause in section 2. No question of tax or revenue or the protection or security thereof is involved; under this clause, it is declared unlawful for a physician who has paid the required license fee and has bought the order form essential to obtaining the drug, to consume it himself as a drug addict or to give it away or to sell it except in the legitimate exercise of his profession. In our judgment, this prohibition has no relation whatsoever to the taxing power of Congress; it is exclusively an attempt, in the guise of an incidental tax regulation, to exercise the police powers reserved to the states.

We pass only upon the question raised under this indictment and express no opinion upon the power of Congress to limit the sale of order forms to those entitled to registration, thereby excluding the mere consumer from the right to obtain the drug otherwise than as a patient of a physician.

[3] 2. While the act does not, in express words, require a separate registration and payment of tax as dealer and as physician, there is a clear differentiation between them as to the obligations imposed

upon them respectively under the act. They represent distinct classes; each class is required to pay the tax. And the combination of both occupations in one individual does not exempt him from payment of a separate tax as a dealer and as a physician. Revised Statutes, § 3236 (Comp. St. § 5959), copied as footnote,[3] as a provision of existing law relating to special taxes, is expressly made applicable to the special tax imposed under section 1.

Furthermore, in accordance with the power vested in him under this section 1, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, made a regulation to the same effect (copied as footnote).[4] Wallace v. U. S., 243 Fed. 300, 156 C. C. A. 80.

"A sale, dispensing or distribution" is permitted to a dealer for a customer on a written prescription; but only "a dispensing or distribution" is allowed to a physician treating a patient, and then only in the course of his professional practice.

The evidence abundantly justified the verdict that the transaction with Dean was a sale by defendant as a dealer in drugs.

It follows, therefore, that the judgment and sentence must be reversed as to the first 12 counts, and affirmed as to count 14, and the cause remanded for further proceedings in accordance herewith.

NOTE.—Judge Kohlsaat concurred in the foregoing conclusions, but died before the opinion was prepared.

## On Petition for Rehearing.

In the petition for rehearing as to the fourteenth count, plaintiff in error, in addition to restating matters heretofore considered and as to which we find no occasion for further discussion, calls attention for the first time to a portion of article 10 of the Revised Regulations of the Treasury Department as of May 4, 1916, contained in Internal Revenue Regulations, No. 35, and reading as follows:

"A physician, dentist, or veterinary surgeon may not engage in the business of selling narcotic drugs unless he is a registered dealer, authorized by the state laws to engage in such business. Additional registration is not required, however, when narcotic drugs are sold to a patient upon whom a physician, dentist, or veterinary surgeon is in personal attendance."

These sentences, however, are to be construed in the light both of article 1 and of that part of article 10 immediately preceding the quoted sentences, and reading as follows:

"Under the exempting provisions of section 2 of the act, no written order is required for the 'dispensing or distribution of any of the aforesaid drugs to a

---

[3] Whenever more than one of the pursuits or occupations hereinafter described are carried on in the same place by the same person at the same time, except as hereinafter provided, the tax shall be paid for each according to the rates severally prescribed.

[4] Every person conducting more than one class or place of business or practicing more than one profession, or at more than one place, in which the narcotic drugs are sold, dispensed or given away, must register and pay the special tax for each profession and business separately, even though conducted at the same address, and separate records must be kept under each registration.

patient by a physician, dentist or veterinary surgeon registered under this act in the course of his professional practice only.' A record, however, is required to be kept of all such drugs dispensed, distributed or administered in his office, and of all such drugs left with any person or patient to be taken in his absence, only such drugs as are personally administered by a physician, dentist or veterinary surgeon when away from his office are exempt from the records."

So construed, the regulations clearly require a physician who acts as a dealer to register as such; but a sale to one in the course of his personal attendance upon him as physician does not necessitate registration as a dealer.

The sale here contemplated is a sale by him not as a dealer but as a physician; instead of "dispensing, distributing or administering" a dose of the narcotic as a part of his medical service, without a separate charge therefor, it may be that in some places physicians are accustomed to charge specifically therefor.. While this might well be deemed a dispensing, yet as it could be held to be sale, the regulations out of abundant caution provide that in such a case, doubtless because the physician is not then acting as a dealer, no additional registration is required.

In the instant case, however, the indictment charges and the evidence abundantly proves that, though the purchaser was registered as a patient, the sale was made to him by defendant acting as a dealer, and not as a physician in personal attendance, administering or dispensing the drug as part of the professional service.

That the same form of stamp or receipt is issued by the department to all persons, reciting that the money is for "Special Tax on Manufacturer, Distributor, etc., of Opium, etc., under Act of December 17, 1914," in no manner modifies the specific requirement under article I of the regulations, of double registration for one acting both as physician and as dealer.

Rehearing denied.