**UNITED STATES of America,**
**Appellant,**

v.

**Bennett GOLDBERG, Appellee.**

**UNITED STATES of America,**
**Appellant,**

v.

**Donald Robert HAMILTON,**
**Appellee.**

**UNITED STATES of America,**
**Appellant,**

v.

**Claude J. HUPP and John W. Reilly,**
**Appellees.**

**UNITED STATES of America,**
**Appellant,**

v.

**Frank S. LEONARD, Appellee.**

**UNITED STATES of America,**
**Appellant,**

v.

**James D. O'CONNOR, Appellee.**

**UNITED STATES of America,**
**Appellant,**

v.

**Constantine W. PARZYCK and Steven F.**
**Parzyck, Appellees (two cases).**

**UNITED STATES of America,**
**Appellant,**

v.

**Theodore WISNIEWSKI, Appellee.**
**Nos. 15239–15246.**

United States Court of Appeals
Eighth Circuit.
Aug. 8, 1955.

Alex Dim, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., was with him on the brief), for appellant.

Philip J. Stern, Minneapolis, Minn. (Simon Meshbesher, Minneapolis, Minn., was with him on the brief), for appellees Bennett Goldberg and Frank S. Leonard.

Linus J. Hammond, St. Paul, Minn. (Cummins, Cummins, Hammond and Ames, St. Paul, Minn., were with him on the brief), for appellees Claude J. Hupp and John W. Reilly.

T. H. Wangensteen, Minneapolis, Minn., and William P. Murphy, St. Paul, Minn. (Elmer J. Ryan, St. Paul, Minn., and Raymond J. Julkowski, Minneapolis, Minn., were with him on the brief), for appellees James D. O'Connor, Constantine W. Parzyck, Steven F. Parzyck, and Theodore Wisniewski.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The Government appeals from the judgment dismissing the indictment upon defendant's motion in each of the eight cases herein involved. The appeals are consolidated by stipulation. Jurisdiction to consider these appeals is conferred by 18 U.S.C. § 3731.

The appellees, who will hereinafter be designated as defendants, are retail on-sale liquor dealers and bartenders employed by them. Each indictment charged the defendant with violation of 26 C.F.R., § 175.121, 1952 Cumulative Supplement, which will hereinafter be referred to as the regulation, and which reads:

"Reuse of containers. No liquor bottle or other authorized container shall be reused for the packaging of distilled spirits except as provided in § 175.62, nor shall the original contents, or any portion of such original contents, remaining in a liquor bottle or other authorized container be increased by the addition of any substance."

Section 175.62, providing exceptions, is not pertinent here.

The regulation was promulgated by the Secretary of the Treasury, pursuant to 26 U.S.C. § 2871, which provides:

"Whenever in his judgment such action is necessary to protect the revenue, the Secretary is authorized, by the regulations prescribed by him * * * (1) to regulate the size, branding, marking, sale, resale, possession, use, and re-use of containers * * * designed or intended for use for the sale at retail of distilled spirits * * *."

The statute also provides a penalty for the willful violation of any regulation prescribed.

The first count of the Goldberg indictment reads:

"(26 U.S.C. Sec. 2871; Reg. 13, Sec. 175.121 (26 C.F.R., Sec. 175.-121, 1952 Cumulative Pocket Suppl.).)

"The Grand Jury charges:

"During the period from on or about May 1, 1953, to on or about June 30, 1953, in the City of Minneapolis, County of Hennepin, State and District of Minnesota, one Bennett Goldberg, did, within the meaning of the terms used in the Code of Federal Regulations, Title 26, Part 175, as published in the Cumulative Pocket Supplement thereof, wilfully, wrongfully, and unlawfully reuse for the packaging of distilled spirits six marked liquor bottles, more or less, previously containing distilled spirits and labeled 'Seagram's 7-Crown Blended Whiskey', by increasing the original contents of each of said marked liquor bottles by the addition of a substance, to-wit, liquid distilled spirits subject to taxation under the Internal Revenue Laws of the United States, and such reuse was not within any of the methods authorized by Regulation 13, Sec. 175.62 (26 C.F.R., Sec. 175.62, 1952 Cumulative Pocket Supp.)."

All of the parties to these appeals have stipulated:

"That the indictment in the Bennett Goldberg case, Criminal No. 8590, shall be and hereby is considered to be a representative indictment and similar to those involved in all of the above entitled matters, save and except that indictment involving Constantine W. Parzyck and Steven F. Parzyck, Criminal No. 8608. All the indictments as they concern all the parties in the above entitled matters relate to the reuse of marked liquor bottles by increasing the original contents by the addition of a substance, to wit, liquid distilled spirits, whereas the indictment in Criminal No. 8608 as it concerns Constantine W. Parzyck and Steven F. Parzyck charges reuse of marked liquor bottles by increasing the contents by the addition of a substance, to wit, water."

It appears from the record that the indictment in Case No. 15,246 charges violation of 26 U.S.C. § 2868, and that the indictment in that case is not in the same form as the indictments in the remaining cases. However, no attempt is made in any of the briefs to show that Case No. 15,246 differs from the other cases. We shall, therefore, in conformity

with the stipulation of the parties consider all cases except Case No. 15,245 (No. 8608 below), where the substance added was water, as being the same.

In support of their motions to dismiss in the court below and to sustain the judgments of dismissal, the defendants urge:

1. The indictments do not state the essential facts necessary to constitute an offense against the laws of the United States.

2. Sec. 175.121 of Regulations 13, purported to be adopted pursuant to Sec. 2871 and Sec. 2803, of Title 26 U.S.C. is so vague, unclear, indefinite and ambiguous as to make enforcement of it a denial of due process.

3. Sec. 175.121 of Regulations 13 goes outside the scope of the authority delegated to the Secretary of the Treasury by Title 26 U.S.C. Sec. 2871.

1. We believe that the indictments adequately state the essential facts constituting the offense charged. Rule 7 (c) of the Federal Rules of Criminal Procedure, 18 U.S.C. provides in part as follows:

"The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."

In United States v. Hess, 124 U.S. 483, 487, 8 S.Ct. 571, 574, 31 L.Ed. 516, the Court states:

"* * * The object of the indictment is—First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. * * *"

The Supreme Court in Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, in speaking of the test for the sufficiency of an indictment, states:

"* * * The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' * * *"

This court in the recent case of Heasley v. United States, 8 Cir., 218 F.2d 86, 89, in holding an indictment charging an income tax violation sufficient, quoted and applied the test set out in the foregoing excerpt from the Hagner case. See also Dunne v. United States, 8 Cir., 138 F.2d 137, 145; Hewitt v. United States, 8 Cir., 110 F.2d 1, 5; Taran v. United States, 8 Cir., 88 F.2d 54, 56.

The indictment, which has been set out hereinabove, makes reference to the regulation violated and the statute pursuant to which the regulation was promulgated, and clearly charges that the defendant wilfully, wrongfully, and unlawfully reused for packaging of distilled spirits marked liquor bottles by increasing the original contents of said marked liquor bottles by the addition of a substance, to-wit, liquid distilled spirits subject to taxation. In Case No. 15,245 the indictment alleges that the substance added was water. Previous indictments against these defendants were dismissed by Judge Nordbye. His opinion supporting the dismissals is reported at D.C., 123 F.Supp. 385. The indictments dismissed by Judge Nordbye did not state what the substance added consisted of, and in this respect and others differed materially from the indictments now under consideration. The indictments involved in the present case do not allege the type of business in which defendants were engaged. Defendants contend that

such an allegation is necessary in the indictment. The regulation is broad and prohibits the reuse of marked bottles by anyone. Consequently, the applicability of the regulation is not limited to any particular class of persons, and accordingly it was unnecessary that the nature of the business of the defendants be described.

█ The Government, in the court below and in its brief and oral argument here, conceded that the tax had been paid on the whiskey used to refill the marked bottles. Apparently what was done here was to add a cheaper brand of tax-paid whiskey to the contents of a partially-filled marked bottle of a more expensive brand of whiskey. Defendants contend that it was an essential element of the offense that the added whiskey be whiskey on which tax had not been paid, and that it was necessary to include an allegation to that effect in the indictment. We do not so read the regulation. By its plain terms the regulation makes it unlawful for anyone to increase the contents of any authorized container by the addition of any substance.

█ On this appeal we can give no consideration to the Government's concession that the added whiskey was tax-paid whiskey. The sufficiency of the indictments must be determined by what the indictments in fact charge. Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 210 F.2d 732, 741; United States v. Quinn, D.C.N.Y., 111 F. Supp. 870, 873; United States v. Westbrook, D.C.Ark., 114 F.Supp. 192, 199; United States v. Mertine, D.C.N.J., 64 F.Supp. 792.

The indictments here clearly advised each defendant of the facts constituting the offense with which he was charged, and his conviction or acquittal upon the indictment would be a bar to further prosecution for the same offense. The indictments are sufficient to charge the defendants with violation of the regulation.

█ 2. We shall now consider the problem of whether the regulation is so vague, unclear, and indefinite as to make the enforcement of it a denial of due process. In United States v. Harriss, 347 U.S. 612, 617–618, 74 S.Ct. 808, 812, 98 L.Ed. 989, the Court states the rule as to definiteness:

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

█ "On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague even though marginal cases could be put where doubts might arise. United State v. Petrillo, 332 U.S. 1, 7, 67 S.Ct. 1538, 1541 [91 L.Ed. 1877]. Cf. Jordan v. De-George, 341 U.S. 223, 231, 71 S.Ct. 703, 707, 95 L.Ed. 886. And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction. * * *"

Cases in which the Supreme Court has upheld a statute or regulation against a charge of vagueness are collected in foot note 15, at page 624 of 347 U.S., at page 815 of 74 S.Ct., in the Harriss case.

The construction problem confronting us here is very similar to the one considered in United States v. A. Graf Distilling Co., 208 U.S. 198, 28 S.Ct. 264, 52 L.Ed. 452. In that case the statute provided for a penalty if a stamped container was sold containing *anything else* other than the inspected and tax-paid original contents. The question certified to the Supreme Court was whether the term "anything else" employed in the statute included substances that are not in themselves taxable under Federal law. The substance that had been added in the

Graf case was burnt sugar or caramel for coloring. The Government contended that the burnt sugar was included in the term "anything else." There, as in the present cases, the Government urged that the adding of anything, whether taxable or not, to the contents of the stamped and branded container seriously impairs enforcement of the revenue laws, in that it makes it difficult for the enforcing officers to verify that the package contains only the identical spirits upon which the tax was paid. This argument has considerable strength and was upheld by the trial court in the Graf case, United States v. Three Packages of Distilled Spirits, D.C., 125 F. 52, 55. The Supreme Court, however, determined that the words "anything else" were intended to apply only to taxable substances, stating, 208 U.S. at pages 205, 206, 28 S.Ct. at page 267:

> "The section is one of many dealing with the subject of collecting a revenue from the taxation of the articles therein mentioned and in the manner therein provided. The aim of the whole statute is to make all of the taxable articles actually pay the tax, and to that end it prohibits those acts which might possibly lead to an evasion of the payment of the tax due upon any taxable article. When, therefore, in the course of the many provisions for collecting the tax and for preventing any evasion of its due payment the statute prohibits the putting of anything else in the barrel or package, etc., after it has been branded or stamped, it seems to us the natural meaning of the language limits the addition to anything of a taxable nature, and does not include an article which is not taxable, is wholly harmless, and added for a purpose not illegal or in itself improper.

> " * * * The language used, when considered in connection with the whole statute, is not so plain as to preclude the application of those general rules of construction of statutes which frequently interpret language in accordance with what seems to be the real meaning of the legislature, although not in exact and literal obedience to the wording of the law."

See also United States v. Thirty-two Barrels of Distilled Spirits, D.C., 5 F. 188; Three Packages of Distilled Spirits, D.C., 14 F. 569; United States v. Bardenheier, D.C., 49 F. 846, 848; United States ex rel. United States Attorney v. Nine Casks etc., D.C., 51 F. 191.

■ In our present cases, as in the Graf case, the applicable statute and regulation were part of a series of statutes and regulations designed to protect the revenue and to avoid the evasion of tax upon distilled spirits. The words "any substance" in the regulation we are considering should be construed in the same manner as the words "anything else" were construed in the Graf case. We hold that the words "any substance" in the regulation means any substance subject to taxation under the internal revenue laws of the United States. So construed, the regulation is not vague, indefinite, or ambiguous.

■ 3. Defendants' final contention is that the regulation goes outside the scope of the authority delegated to the Secretary of the Treasury by 26 U.S.C. § 2871. The defendants concede that the Federal Government in order to exist has inherent power to impose taxes, and that it may select the subjects it desires to tax, and that one of the subjects of taxation selected has been distilled spirits. Defendants do not attack the validity of 26 U.S.C. § 2871. Defendants contend that the Secretary under the statute is authorized to issue regulations only for the purpose of protecting the revenue. We agree with this contention. The fact that the public may be defrauded by the device used here of pouring cheap whiskey into bottles bearing the label of a more expensive brand would not justify the regulation since under the enabling statute the Secretary may prescribe regulations only to protect the revenue. De-

fendants contend that the regulation is not one that is reasonably necessary to protect the revenue. This contention presents a controlling issue in the determination of these cases. What is said in the Graf case, supra, at least strongly tends to hold that the regulation as to reused containers is directly related to the collection of the tax on distilled spirits, and the quotation from that case hereinabove set out is appropriate here. In United States v. Goldsmith, 2 Cir., 91 F.2d 983, certiorari denied 302 U.S. 718, 58 S.Ct. 38, 82 L.Ed. 555, the Commissioner was authorized by law to prescribe regulations pertaining to obtaining information about disposition of products, such as sugar, which could be used for producing distilled spirits. The act and the regulations thereunder were held to be constitutional, the court saying 91 F.2d at pages 985–986:

"* * * Congress could provide him with the means for obtaining such information in whatever detail might be necessary and that it preferred to let the Commissioner decide as to the need in the actual administration of the law rather than to require all dealers in such substances make reports, often perhaps wholly unnecessary and unwanted, curtailed the rights of no one. * * * We think this delegation of power was properly limited to administrative details within United States v. Grimaud, supra [220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563], and that is so regardless of the fact that the regulations there involved only dealt with public lands. These regulations deal with the public revenue and, though it may be that they more closely affect private rights we believe the resolution is so limited that action within its scope was lawful. * * *"

In Felsenheld v. United States, 186 U.S. 126, 22 S.Ct. 740, 46 L.Ed. 1085, the constitutional right of Congress to prescribe methods of packaging taxable tobacco is upheld, and such right is quite fully discussed. Among other things, the Court states, 186 U.S. at page 132, 22 S.Ct. at page 742:

"It seems to us that, in the rules and regulations for the manufacture and handling of goods which are subjected to an internal revenue tax, Congress may prescribe any rule or regulation which is not in itself unreasonable; that it is a perfectly reasonable requirement that every package of such goods should contain nothing but the article which is taxed * * *."

An elaborate system has been set up by legislation and regulations thereunder to protect the revenue on distilled spirits. 26 C.F.R., § 175.2 regulates in detail the manufacture and sale of bottles for packaging distilled spirits. Licenses must be obtained by the bottle manufacturers, containers may be sold only to licensed and authorized users, and the permit number of the manufacturer, the year made, the symbol assigned to a licensed user, and the words "Federal law prohibits sale or reuse of this bottle" shall all be legibly blown on the shoulder of each bottle. Labels must be attached showing, among other things, brand name, kind, alcoholic content, name and address of the producer, and, if blended, age of the youngest whiskey and the respective percentages by volume of whiskey or whiskies and neutral spirits. 26 U.S.C. § 2803 provides detailed provisions for affixing revenue stamps to containers:

"No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal-revenue taxes imposed on *such* spirits. * * *"

The last cited act requires the tax stamp to show the payment of the tax on the specific liquor held in the container to which the stamp is affixed. There are certain exceptions to § 2803 which do not appear to be applicable, at least as a

matter of law, to the distilled spirits involved in this case.

■ The Government in its brief further argues that the defendants are rectifiers under 26 U.S.C. § 3254(g), and subject to tax as such under 26 U.S.C. §§ 2800 (a) (5) and 3250(f). The Government used this argument to support its contention covered by the first division of this opinion. We do not believe that it was applicable there as the indictment does not refer to the rectification statute and does not sufficiently set out facts charging the violation thereof. However, the rectification statutes are entitled to consideration along with the other statutes in a broad consideration of the Government's plan for protecting the revenue.

■ We are of the opinion that the regulation involved in these cases is reasonably related to the protection of the revenue. Each manufacturer of distilled spirits has a formula. Through the various insignia required to be blown on the bottle, placed on the label, and on the revenue stamp, authorized investigators are able to ascertain with relative ease and reasonable certainty whether the distilled spirits in the container are those described by the various insignia. In the event the whiskey in the container does not correspond with that described and that on which the tax as evidenced by the stamp was paid, the burden should not be upon the Government to assume the almost insurmountable task of determining the source of the whiskey added to the container contrary to the regulations. It seems to us that the regulation prohibiting the adding of "any substance", which we have heretofore interpreted to mean a substance upon which a tax is due, is an entirely reasonable and necessary enforcement regulation, and as such is designed to and does protect the revenue. The same argument used against the regulation under attack here could be used against the various other regulations, such as the blowing of information on the bottles and the labeling. If the Government is not authorized to prescribe regulations to facilitate detection of possible tax violations, satisfactory enforcement would be most difficult.

■ We conclude for the reasons hereinabove set out that the judgment dismissing the indictment in No. 15,245, wherein the substance added was water, is affirmed; and that the judgments dismissing the remaining cases are reversed and all cases except No. 15,245 are remanded to the District Court for further proceedings not inconsistent with the findings expressed in this opinion.

JOHNSEN, Circuit Judge (dissenting in part).

I think the case that is being affirmed should, equally with the others, be reversed.

The cases being reversed are ones where stamped, marked bottles, originally containing whiskey of a certain brand and proof, had been made to have contents, in part, of other (cheaper brand) liquor. The case being affirmed is one where stamped, marked bottles, originally containing whiskey of a certain brand and proof, had been made to have contents of part of the original liquor and of added water. In the latter case, the spirit proof, to which the stamp upon the bottle had application, necessarily was as much subject to being changed by the water added as by the liquor added in the other cases.

It was admitted in the District Court, and is admitted here, for purposes of consideration of the Regulation that is involved, that all of the defendants are tavern operators and bartenders, who were making use of the bottles, with their changed-proof contents, to sell liquor by the drink to the general public.

The Regulation in question is 26 C.F.R. § 175.121, entitled "Reuse of containers", and providing: "No liquor bottle or other authorized container shall be reused for the packaging of distilled spirits except as provided in § 175.62 [the exceptions being concededly not here applicable], nor shall the original contents, or any portion of such original

contents, remaining in a liquor bottle or other authorized container be increased by the addition of any substance."

It will be noted that the Regulation contains two prongs, both of which appear to be commonly purposed, in relation to making use of a bottle for liquor-containing purposes—(1) that a liquor bottle may not at all, except as provided in § 175.62, be used for the packaging of any other liquor whatsoever, and (2) that it may no more be used to make an increase in the amount of the original liquor contents remaining in it at any time by the addition of any substance to it.

When it is borne in mind that what the Regulation is directed at is, as its title indicates, "Reuse of containers", it would seem to me that the plain, practical effect of the Regulation simply is, where § 175.62 is without application, to prohibit the using of a liquor bottle as a container for any distilled spirits other than the original liquor, in whole or part, which came therein, and with the right to use the bottle as a container for such liquor continuing only so long as it is allowed to remain in its original state and form, by not having anything added thereto that increases the quantity of the bottle's contents. On this basis, it is not possible for a liquor dealer, such as the parties here were, to effect any change in the proof-content of bottled liquor, so that all such liquor will in general be subject to ready identification as that to which the stamp upon the bottle is applicable, and as therefore not normally requiring any investigation of whether it is in fact tax-paid or tax-unpaid liquor.

As I have stated, all of the situations before us involve retail liquor sellers, a field that is of course one of general and not marginal revenue-enforcement concern, so that the Regulation properly may be dealt with here on the basis of that business and the question of revenue-enforcement therein. I should not think that any tavernkeeper or bartender could possibly misunderstand what the impact of the Regulation is upon the operation of his business. And I am sure that it is not possible for anyone to contend that this imposes an unwarranted burden or hardship upon that business. If then the Regulation, as its language reads, is reasonably capable of serving as a relevant and facilitative instrument in proper incidents of revenue enforcement against tavernkeepers and bartenders, there can be no occasion, nor do I believe that there exists any right, to undertake judicially to whittle down or curb the force and application of the Regulation in any way.

Is the Regulation capable of serving as a relevant and facilitative instrument in proper incidents of revenue enforcement in the tavern business? Inspection or examination of bottles used in a public bar, especially if any suspicion may have been aroused, will naturally, it seems to me, be engaged in by revenue agents as an ordinary incident of enforcement precaution and revenue protection. The Regulation, as it stands, has the effect of making tavernkeepers warrant to the Treasury Department and its enforcement agents that they are not selling anything except tax-paid liquor, in that their bottles are required to contain only the liquor to which the stamps affixed thereto are applicable, and this entirely in its original state and form.

If the character of a tavernkeeper is such that a revenue agent deems it desirable to make a check as a matter of enforcement precaution, the Regulation, if unviolated, affords a basis, as I have suggested, for ready identification, as a matter of brand and spirit proof, that the contents of each bottle constitute the liquor to which the stamp thereon has application and that the bottle therefore does not contain tax-unpaid liquor. But if anything has been added to the contents of the bottle, so as to increase its fluid quantity and thereby change its spirit proof, the revenue agents necessarily will not have this ready means of ascertaining or assuring themselves that the bottle does not contain tax-unpaid liquor. This will be true whether the thing added is liquor or other fluid,

such as water, since either is capable of changing the proof and so leaves the resulting liquor contents of the bottle not subject to the same measure of simple identification as to nature and source. In both situations, the revenue agents obviously face a more difficult task of satisfying themselves, in the revenue interest, that the contents of the bottle are not tax-unpaid liquor than where the liquor remains identifiable in proof and brand, from its unchanged status, as bearing relationship to the affixed stamp.

This seems to me sufficient to require that the Regulation be given effect, as it stands, as a facilitative instrument of revenue-agent investigation and enforcement. The majority opinion, however, holds that the Regulation should be construed as having been intended by the Secretary of the Treasury to mean and apply only to "any substance subject to taxation under the internal revenue laws of the United States". In other words, what the majority in effect say is that the Secretary of the Treasury intended the Regulation, in its impact upon retail liquor dealers, to mean only that they were not at liberty to add other liquor to the bottles from which they were making sales by the drink to the public, but that they were perfectly free to increase the quantity of liquor in such bottles and change its proof content in any way they might see fit, by adding water or any other fluid, even though this in the same manner would create difficulties for revenue agents in checking and identifying the contents of the bottle as tax-paid liquor.

The basis on which this intention and meaning are imputed to the Regulation is the holding of the Supreme Court in United States v. A. Graf Distilling Co., 1908, 208 U.S. 198, 28 S.Ct. 264, 52 L.Ed. 452, where the Government was seeking to subject to forfeiture three barrels of whiskey to which burnt sugar or caramel had been added for coloring purposes, after the barrels had been duly stamped by revenue officers. The forfeiture was sought under a statute which prohibited such a barrel from "containing anything else than the contents which were therein when said articles had been so lawfully stamped \* \* \*". The Court, in concluding that Congress, by the particular statute, had not intended the words "anything else" to " 'include substances that are not in themselves taxable under the laws of the United States' ", said: "We are here called upon to determine what is the proper construction of the language of the statute when it speaks of selling a barrel and its contents after it has been properly stamped, and which, at the time of sale, contained anything else than the contents which were therein when the barrel was stamped by the revenue officer. \* \* \* The language used, when considered in connection with the whole statute, is not so plain as to preclude the application of those general rules of construction of statutes which frequently interpret language in accordance with what seems to be the real meaning of the legislature, although not in exact and literal obedience to the wording of the law. \* \* \* We cannot see \* \* \* that any reasonable purpose could be attributed to Congress in prohibiting an addition, such as is charged in this case \* \* \*." 208 U.S. at pages 205 and 206, 28 S.Ct. at pages 265 and 266.

But the fact that the Court took the view in 1908 that "the real meaning of the legislature" in enacting the particular statute involved had not been to prevent the putting of burnt sugar into a barrel of whiskey for coloring purposes, but simply to prohibit the adding of any taxable substance to a barrel after it had been stamped, can hardly blindly be said to be determinative that the Secretary of the Treasury in promulgating a regulation as to the use or reuse of opened liquor bottles, in the practical problems of present-day revenue investigation and enforcement, necessarily could have had only the same intent, despite the fact that the language used in the Regulation clearly indicates the contrary. Certainly, the Regulation is entitled to its own fair evaluation of ac-

tual intent, in relation to its own purpose as indicated by its provisions and circumstances.

Congress specifically gave the Secretary of the Treasury the following power, among others, for revenue-protection purposes: "Whenever in his judgment such action is necessary to protect the revenue, the Secretary is authorized, by the regulations prescribed by him * * * (1) to regulate the size, branding, marking, sale, resale, possession, *use and re-use of containers* * * * *designed or intended for use for the sale at retail of distilled spirits* * * *."* (Emphasis mine.) 26 U.S. C.A. § 2871.

If 26 C.F.R. § 175.121, promulgated on the basis of this power, was intended merely to prohibit the putting of other liquor into a bottle, then the language of the second prong of the Regulation, "nor shall the original contents, or any portion of such contents, remaining in a liquor bottle or other authorized container be increased by the addition of any substance", is redundant and purposeless, for the prohibiting of putting other liquor into a bottle had already been clearly effected by the first prong of the Regulation that "No liquor bottle or other authorized container shall be re-used for the packaging of distilled spirits except * * *". Putting any other liquor into a bottle for the purpose of selling it therefrom is obviously a reuse of the bottle *"for the packaging of distilled spirits".*

Thus, the second prong of the Regulation necessarily is entitled to be regarded as having been intended to mean something more than putting other liquor into a bottle, if the Regulation is to be accorded the privilege of being read as a whole. To me, it seems clear that the "real meaning" and "reasonable purpose" of the Regulation (using the expressions of the Supreme Court) were, as I have said above, in its relation to liquor dealers engaged in making sales of drinks to the public, to prohibit the using of a liquor bottle as a container for any distilled spirits other than the original liquor, and to permit its use as to such liquor only so long as that liquor was permitted to remain in its original state and form, by not having anything added thereto increasing the amount of the bottle's content.

The investigation and enforcement facilitation which this affords to revenue agents, in having bottles prevented from being used to hold liquor of changed strength and proof and so leaving the liquor readily identifiable with the stamp, enabling them to determine generally that tax-unpaid liquor is not being sold by a tavernkeeper, has already been commented upon and requires no further discussion.

I had hoped that this relevant, facilitative and needed instrument of investigation and enforcement would not judicially have been taken away from the revenue agents, by such an imputation of artificial and unnecessary intention and meaning to the Regulation, as I feel the Court has done.