Eugene E. **HANF**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15428.

United States Court of Appeals Eighth Circuit.

July 25, 1956.

Certiorari Denied Oct. 22, 1956.

See 77 S.Ct. 102.

C. Stanley McMahon, St. Paul, Minn., for appellant.

Alex Dim, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

Eugene E. Hanf was tried before and convicted by a jury on Counts 1 and 3 of an indictment charging a violation of 26 U.S.C.A. § 2857, 26 C.F.R. § 194.75 and 27 U.S.C.A. § 203(c) (1). Prior to trial, the court, on motion of the government, dismissed Count No. 2. The indictment, insofar as it may be pertinent herein, is as follows:

"United States of America,
 Plaintiff,
 v.
Eugene H. Hanf,
 Defendant.
 Indictment
 "(26 U.S.C., Sec. 2857, 26
 C.F.R., Sec. 194.75)
 "The Grand Jury charges:
 .."Between.October 16, 1953, and July 1, 1954, inclusive, in the City of Austin, County of Mower, State and District of Minnesota, Eugene E. Hanf, did then and there wilfully, wrongfully, unlawfully and intentionally fail to make entries in and properly keep Record 52B, 'Wholesale Liquor Dealer's Monthly Report', and Form 338, 'Wholesale Liquor Dealer's Monthly Report (Summary of Forms 52A and 52B)', and knowingly and intentionally and wilfully submitted and filed said forms and documents, containing false statements and false entries, with the United States Treasury Department, Internal Revenue Service.

 "Count II
 "[Dismissed.]

 "Count III
 "(27 U.S.C., Sec. 203(c) (1).)
 "Between October 16, 1953, and July 1, 1954, inclusive, in the City of Austin, County of Mower, State and District of Minnesota, Eugene E. Hanf, did wilfully, wrongfully, unlawfully and intentionally engage in the business of purchasing distilled spirits for resale at wholesale, without first having procured a wholesaler's basic permit."

At all times dealt with herein, the appellant had been an off-sale retail liquor dealer in Austin, Minnesota, doing business under the name of Bell Liquor Store. He was also the holder of a wholesaler's special tax stamp under the provisions of 26 U.S.C.A. § 3250(a) (1), 1939 Internal Revenue Code. As the holder of a wholesaler's special tax stamp, the appellant was permitted to sell distilled spirits in lots of five wine gallons or more to the same person at the same time provided he kept Treasury Department records Forms 52, 52A, 52B and 338 as required by 26 U.S.C.A. § 2857(a), 1939 Internal Revenue Code, and the regulations issued by the Commissioner of Internal Revenue to be found in 26 Code of Federal Regulations, § 194.75(a).

Appellant made no reports on the required Forms 52A and 52B. Form 338 was falsified and, as such, submitted. The government further established that beginning in 1952 and including the time

covered by the indictment substantial sales were made in excess of five wine gallons at one time to one person but that such sales were not reflected in the forms hereinbefore mentioned.

It was the position of the government that under the Internal Revenue laws the appellant, as the holder of a Federal Retail Liquor Dealer's Stamp, was permitted to sell distilled spirits in quantities of less than five wine gallons to the same person at the same time and, under the Internal Revenue laws, the appellant, as the holder of a Federal Wholesale Liquor Dealer's stamp, was permitted to sell in quantities of five wine gallons or more to the same person at the same time, but that under the provisions of 27 U.S.C.A. § 203(c) (1) the appellant was not permitted to sell to trade buyers for resale unless he was the holder of a basic permit; that appellant had never applied for a basic permit and has never been issued a basic permit at any time, and that accordingly he had no right to *purchase* distilled spirits at wholesale for resale to trade buyers. That he did purchase for resale at wholesale is beyond dispute. Upon conviction, the appellant was sentenced to a period of imprisonment of 3 months and a fine of $1500.00 on Count 1 and to pay a fine of $1,000.00 on Count 3, the appellant to be imprisoned until payment of the fines or until otherwise discharged as provided by law.

Appellant raises five points on appeal to this court. They will be considered in the order in which they appear in appellant's brief.

■ Appellant's first point goes to Count 1. Appellant claims that "Count 1 of the indictment does not charge an offense against the United States in that it does not contain the essential facts of the offense intended to be charged". One of the principal cases relied on is Harris v. United States, 8 Cir., 1939, 104 F.2d 41, 44. In that case the first paragraph of the indictment charged defendant with making "a false 'Statement of Mailing'" and later in the second paragraph referred to the instrument as a "receipt".

The court concluded that two different instruments were contemplated; therefore the charge against defendant was ambiguous or at least not clear. To establish a crime, it was necessary that the paper be properly identified and this was not done. In the instant case, there was no question of proper identification. The statute violated was clearly set forth. Appellant was aware, or could have been made aware, of the offense being charged. The material facts constituting the offense were alleged. Failure to state *every* fact concerning the offense does not destroy the entire pleading. In short, in the Harris case the indictment was flagrantly deficient. It and the other cases cited by appellant are not authority for appellant's contention.

■ With reference to the question of sufficiency of the indictment, the trial court, in denying appellant's motion to dismiss Count 1, stated:

"The purpose of an indictment is to acquaint a defendant with the offense with which he is charged so that he can prepare his defense and protect himself against double jeopardy. As defendant points out, Count 1 does not allege that Hanf is a person who is required by law to keep such records and make such reports as are set forth in this count. However, that this indictment acquaints the defendant with the charge is evident, and in view of the charge that he unlawfully failed to comply with the statute, to all intent and purposes he is informed that he is one of the persons who is required under the law to keep such records and file such reports. A reading of the indictment would permit no other interpretation, and defendant was fully acquainted with the Government's contention that he was required under the law to make such records and to file such reports as fully as if a formal statement in the indictment was made to that effect."

In a similar attack on an indictment, this court said, in Hewitt v. United

States, 8 Cir., 1940, 110 F.2d 1, 6, certiorari denied 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409:

"The sufficiency of an indictment should be judged by practical, and not by technical, considerations. It is nothing but the formal charge upon which an accused is brought to trial. An indictment which fairly informs the accused of the charge which he is required to meet and which is sufficiently specific to avoid the danger of his again being prosecuted for the same offense should be held good."

See also United States v. Goldberg, 8 Cir., 1955, 225 F.2d 180; Wolpa v. United States, 8 Cir., 1936, 86 F.2d 35, certiorari denied 299 U.S. 611, 57 S.Ct. 317, 81 L.Ed. 451; Cowl v. United States, 8 Cir., 1929, 35 F.2d 794, 797, and cases therein cited.

We are of the opinion that here the indictment sufficiently apprised the appellant of the formal charge which he had to meet. If he desired further information, a demand for a bill of particulars was open to him under Rule 7(f), Federal Rules of Criminal Procedure, 18 U.S.C.A.

Appellant's second point is also against Count 1 of the indictment. It is that "Count 1 of the indictment is duplicitous in that it charges more than one offense in one count". The government's first reply to the charge that Count 1 of the indictment was duplicitous is that the attack thereon for duplicity was not timely and was properly denied for that reason. The government points to Rule 12(b) of the Federal Rules of Criminal Procedure which provides in part as follows:

"(1) Defenses and Objections Which May Be Raised.

"Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

"(2) Defenses and Objections Which Must Be Raised.

"Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

"(3) Time of Making Motion. The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter."

The indictment against the appellant was returned on September 9, 1954. On September 27, 1954, the appellant appeared with his counsel at St. Paul, Minnesota, and entered a plea of not guilty to all counts in the indictment. No attack on the indictment was made then or at any time until the case was called for trial at Winona, Minnesota, on May 23, 1955, at which time the appellant moved to dismiss Count 1 on the ground that it was duplicitous. The trial court stated that the objections to Count 1 of the indictment were not timely and that "they should be denied for that reason", but nevertheless proceeded to give consideration to the attack on its merits. The trial court stated:

"In considering the motion to dismiss for duplicity, it will be noted that it was defendant's position that the regulations require the report on Form 338 to be made monthly, and in that from October, 1953, to June, 1954, eight months are included, therefore eight separate offenses were charged with reference to his failure to make entries in Form

338. However, a reading of the statute demonstrates that the objection of duplicity as urged by defendant at the opening of the trial is without any substantial merit. The pertinent portions of the statute read:

" 'Every rectifier and wholesaler who refuses or neglects to keep such records in the form prescribed by the Commissioner, with the approval of the Secretary. * * * ' shall be subject to the penalty prescribed. The indictment charges that between October 16, 1953, and July 1, 1954, defendant failed to make entries in, and properly keep, record 52B and Form 338. 52B is the daily record and Form 338 is the monthly summary. In that the statute speaks of a wholesale liquor dealer who refuses or neglects to keep such records in the form prescribed by the Commissioner, it seems apparent that such refusal would constitute a continuing offense, and proof which would indicate that such refusal and neglect continued between October, 1953, and July, 1954, would be sufficient to sustain the charge and cannot be subject to the objection of duplicity.

"The gravamen of the offense is the failure to keep the records required under the law. In that the statute uses the term 'records', the mere fact that the failure to keep records involved more than one record required by law would not prevent the Government from proving that the neglect and refusal took place over a period of time. No objection was made to Count I as being vague or indefinite. Defendant made no motion for a bill of particulars, nor did he assume to require the Government to make any election. If there is any duplicity in Count I, it might arise from the fact that the count includes not only the failure to keep records, but also the filing of false records. However,

defendant made no such objection as to duplicity."

 We agree that the trial court would have been thoroughly justified in denying the motions on the grounds that they were not timely made. We also concur with the trial court that even if the motions had been made timely they nevertheless should have been overruled. The indictment charged that between October 16, 1953, and July 1, 1954, the appellant did wilfully and wrongfully fail to make entries in and properly keep record 52B, "Wholesale Liquor Dealer's Monthly Report", and Form 338, "Wholesale Liquor Dealer's Monthly Report (summary of Forms 52A and 52B)", and charged that he knowingly and intentionally submitted said forms containing false statements and false entries. This, in effect, was charging a course of conduct engaged in by the appellant between October 16, 1953, and July 1, 1954. Granting that the government might technically have broken this down into many separate, individual offenses, we do not see the necessity for doing so. The rule against duplicitous pleading is not offended by a count charging more than one act if the acts were part of a transaction constituting a single offense. Certainly, any similar prosecution by the government against this appellant for a violation committed at any time between the dates indicated in Count 1 of the indictment would be a prosecution for the same offense, and would be promptly dismissed.

As we said in Mellor v. United States, 8 Cir., 1947, 160 F.2d 757, 762, certiorari denied 331 U.S. 848, 67 S.Ct. 1734, 91 L.Ed. 1858:

"We know of no rule that renders an indictment duplicitous because it charges as one joint offense a single completed transaction instead of charging in separate counts as many offenses as the evidence at the trial might conceivably sustain."

We find no merit in appellant's second position.

Appellant's third point is that his "motions to dismiss were timely". As already indicated supra, we are of a contrary opinion, but even if timely, the indictment was sufficient and for that reason this point needs no further comment.

Appellant's fourth point is that "Count 1 of the indictment does not charge an offense against. the United States in that it fails to allege in what particulars the statements or entries were false or that their falsity was material to the government and the evidence fails to show materiality". Appellant urged this for the first time after trial and receipt of the jury's verdict. In dealing with this question, the trial court said:

"Likewise, the belated attack directed to the first count in that the count fails to allege in what particulars the alleged statement or entries were false, or to allege that the alleged false statement and false entries or the failure to keep records was material, cannot now be urged by defendant. Objection was not made until after the verdict, and the evidence fully established the materiality of the records which the defendant failed to keep and the materiality of the false entries which he made."

We think that the objection made was not timely and should promptly have been denied. We further believe that the trial court's finding that "the evidence fully established the materiality of the records * * *" may not now be challenged in this court. That the false entries made by the appellant were material to the government seems too plain for argument. Also, the particulars as to falsity need not be alleged in the indictment since they are a matter of proof at the trial.

Appellant's fifth and last point is that "Count 3 of the indictment does not charge an offense because it fails to allege that appellant was engaged in the business of purchasing distilled spirits in interstate commerce and to sustain its validity 27 U.S.C.A. § 203(c) (1) must be interpreted as affecting only interstate or foreign commerce." There appears to be no question from the record but what the appellant was engaged in purely an intrastate business. While the persons and firms from whom he purchased distilled spirits were engaged in interstate commerce, his purchases from them were made entirely within the State of Minnesota and his sales were only to buyers within the State of Minnesota. The statute with which we are concerned and insofar as it may be applicable herein reads as follows:

"*Title 27, United States Code—Intoxicating Liquors.* (Chapter 8, Federal Alcohol Administration Act.)

"§ 203. . Unlawful businesses without permit; application to state agency.

"In order effectively to regulate interstate and foreign commerce in distilled spirits, wine, and malt beverages, to enforce the twenty-first amendment, and to protect the revenue and enforce the postal laws with respect to distilled spirits, wine, and malt beverages:

\* \* \* \* \* \*

"(c) It shall be unlawful, except pursuant to a basic permit issued under this chapter by the Secretary of the Treasury—

"(1) to engage in the business of purchasing for resale at wholesale distilled spirits, wine, or malt beverages; \* \* \*."

Appellant's position is that the Act is unconstitutional if it assumes to control the resale of liquor by wholesalers in intrastate commerce. A bare reading of that part of the Act from which Count 3 was formulated indicates no mention of an attempt to control intrastate commerce; indeed, it expressly states in the preamble that the purpose of the entire Act is "to regulate interstate and foreign commerce". Continuing to read on into 203(c) (1), however, the words "interstate and foreign commerce" are

omitted. The main question, then, becomes whether or not the statute as read literally is intended to cover appellant's business and, if it is so intended, is the statute constitutional?

While the express purpose or objective is to "regulate interstate and foreign commerce", the statute, if read literally, does affect intrastate business in that a basic permit from the Secretary of the Treasury of the United States is necessary in order, among other things, to "engage in the business of purchasing for resale at wholesale * * * ", regardless of whether the one purchasing is doing an intrastate or interstate business. Appellant suggests that inasmuch as, according to his view, the statute, if read literally, is unconstitutional, we so interpret it as to give it a constitutional meaning by reading into it the words "in interstate or foreign commerce" after the word "purchasing".

■ First, we think the statute was worded as Congress intended and that a literal construction must prevail. A reading of the House of Representatives Report No. 1542, 74th Congress, First Session (1935), indicates that the Congress was vitally concerned with the peculiar, difficult and involved problems of the liquor traffic itself and as enhanced by the preceding prohibition era, and that these problems made necessary the "relatively drastic enforcement methods, such as the permit system * * *." The 21st Amendment, in addition to repealing the 18th, had made it the business of the federal government to prohibit the transportation of intoxicating liquor into any state in violation of the laws thereof. This was not a limitation of the constitutional power to regulate interstate and foreign commerce but an additional burden of enforcement on the federal government. It enhanced the difficulties with which Congress had to deal.

■ The House of Representatives Report, supra, leaves no room for doubt that Congress felt it necessary, in order to properly regulate interstate and foreign commerce and carry out its duties under the 21st Amendment, to provide for some control over those engaged in the purchase of liquor for resale at wholesale.

"The permit provisions apply to all members of the specified industries irrespective of whether the permittee's operations are intrastate or interstate in character. Apart from the more effective enforcement of revenue and postal laws which apply as well to intrastate as to interstate operations, laws relating to the enforcement of the 21st Amendment and to interstate commerce require that the permit system extend to all intrastate operations in order that the permit system may be an effective means of preventing evasion of these laws. The intricacies of corporation setups, the establishment of branch houses and sales corporations, the use of rectifiers, blenders and wholesalers as interstate distribution conduits and the disposal of stocks through sale of warehouse receipts make it necessary that all industry members of the specified industries operate under permits irrespective of the character of their operations at any time if the permit system is to prove adequate in more effectively enforcing the revenue and postal laws and laws relating to interstate commerce and the 21st Amendment."

We must conclude from the foregoing and from a reading of the Act itself that the Congress intended to cover intrastate activities because of the effect of such activities on interstate control.

■ The next question is whether the Act as so interpreted is constitutional. It is conceded that the 21st Amendment did not deprive the federal government of control over the liquor traffic in interstate commerce. Arrow Distilleries v. Alexander, 7 Cir., 1940, 109 F.2d 397, 400, certiorari denied 310 U.S. 646, 60 S.Ct. 1095, 84 L.Ed. 141; Washington Brewers Institute v. United States, 9

Cir., 1943, 137 F.2d 964, certiorari denied 320 U.S. 776, 64 S.Ct. 89, 88 L.Ed. 465; Duckworth v. State of Arkansas, 1940, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294. The 21st Amendment by its terms prohibits transportation of liquors into a state in violation of the laws of such state. The ability on the part of the states to restrict liquor traffic in no way deprives the federal government of concurrent jurisdiction. Beyond a doubt the states have been given broad surveillance over liquor business within their boundaries, but it is equally certain that their jurisdiction is not plenary and exclusive. United States v. Frankfort Distilleries, 1944, 324 U.S. 293, 299, 65 S.Ct. 661, 89 L.Ed. 951.

Granting, then, that Congress has the power to regulate interstate commerce in intoxicating liquor and to prohibit transportation or importation thereof into any state in violation of the laws of such state, and that in so implementing that power it attempted by the Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq., to create regulations for intrastate commerce in intoxicating liquor, we must examine the question of whether such attempt was proper.

■ Where activities in intrastate commerce substantially affect interstate commerce so as to make its control difficult, Congress then has the power to regulate such intrastate activities.

"The power of Congress over interstate commerce is not confined to the regulation of commerce among the states. It extends to those activities intrastate which so affect interstate commerce or the exercise of the power of Congress over it as to make regulation of them appropriate means to the attainment of a legitimate end, the exercise of the granted power of Congress to regulate interstate commerce. See McCulloch v. [State of] Maryland, 4 Wheat. 316, 421, 4 L.Ed. 579. Cf. United States v. Ferger, 250 U.S. 199, 39 S.Ct. 445, 63 L.Ed. 936." United States v. Darby, 1940, 312 U.S. 100, 118, 61 S.Ct. 451, 459, 85 L.Ed. 609.

See also Wickard v. Filburn, 1942, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122. This does not advance the proposition that Congress, entirely apart from delegated powers, may enact measures governing local business. It may do so only when the local activity to be regulated substantially affects interstate commerce. See Mandeville Island Farms v. American Crystal Sugar Co., 1948, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328.

■ It is true that distinctions have been made as to "direct" and "indirect" effects on interstate commerce, "indirect" effects being outside the scope of federal regulation. Schechter Poultry Corp. v. United States, 1934, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570. A single transaction involving the sale of liquor or even, as we have in this case, a series of sales by one individual entirely consummated within one state may be of little moment to the course of interstate traffic, yet when combined with many similar sales the cumulative effect on interstate commerce becomes at once apparent. This court holds that even though the activities of appellant were begun and finished within Minnesota, such activity is subject to federal regulation because of its effect upon interstate commerce. Moreover, the wholesalers from whom the liquor was purchased were interstate operators. There was a practical continuity of movement from the distillery to appellant's place of business.

The control of intrastate liquor business by the federal government is not unique. There are many familiar examples of incidental control of certain activities normally beyond Congressional reach. E.g. Minnesota Rate Cases, Simpson v. Shepard, 1913, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511 (regulation of intrastate rail rates); United States v. Wrightwood Dairy Co., 1942, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (regulation of intrastate milk prices); Mulford v. Smith, 1938, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092 (regulation of intrastate tobacco market).

The power to regulate interstate commerce is not the only ground for sus-

taining the constitutionality of the Federal Alcohol Administration Act. In dealing with the appellant's contention that the Act was unconstitutional if it assumes to require wholesalers who sell for resale in intrastate commerce to have a basic permit, the trial court stated:

> "In view of the broad powers of the Government with respect to the enforcement of its revenue laws, the Act irrespective of interstate commerce is reasonably related to the protection of government revenue."

We think the trial court was entirely sound in its statement and that the appellant's contention that the Act has nothing to do with revenue and serves no purpose for protecting revenue cannot be upheld. On two prior occasions this court has dealt with that precise argument. It has held that a statute regulating the refill of liquor bottles was reasonably related to the protection of the revenue and also that a statute with the primary purpose of suppressing the drug habit bore a substantial relation to revenue. United States v. Goldberg, 8 Cir., 1955, 225 F.2d 180, 186, 188; Hughes v. United States, 8 Cir., 1918, 253 F. 543, certiorari denied 249 U.S. 610, 39 S.Ct. 291, 63 L.Ed. 801.

Affirmed.