Barbara Jeanne JOHN, Plaintiff in error-Petitioner,

v.

STATE of Wisconsin, Defendant in error.

Supreme Court

*No. 78–596–CR.  Argued March 3, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 502.)

For the plaintiff in error-petitioner the cause was argued by *Mark Lukoff*, first assistant state public defender, with whom on the briefs was *Richard L. Cates*, state public defender.

For the defendant in error the cause was argued by *Kirbie Knutson*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

DAY, J. Barbara J. John, the defendant, was found guilty after a trial to the court of welfare fraud. The complaint and information alleged that she received

public assistance benefits while intentionally failing to report a change of circumstances affecting her eligibility for those benefits. She was charged with violations of sec. 49.12(1) and (9), Stats. 1977.[1] The sole question presented to the court of appeals and now to this court can be phrased as follows: Does the statute of limitations for the crime of failing to report a change in circumstances affecting a welfare recipient's eligibility for benefits begin to run upon the expiration of the grace period allowed for reporting a change in circumstances or does it commence only upon cessation of either the fraudulent conduct or the receipt of benefits? The court of appeals held that the violation of sec. 49.12 (9), Stats., was a continuing offense and that the offense continued each day the defendant failed to report changed circumstances and continued to accept aid based on the prior circumstances. We agree and affirm.

The defendant applied to the Milwaukee County Department of Public Welfare for aid to families with dependent children (AFDC) on March 7, 1969. She re-

---

[1] "49.12. **Penalties evidence.** (1) Any person who, with intent to secure public assistance under ch. 49, whether for himself or for some other person, wilfully makes any false representations may, if the value of such assistance so secured does not exceed $100, be imprisoned not more than 6 months, if the value of such assistance exceeds $100 but does not exceed $500, be imprisoned not more than 5 years, and if the value of such assistance exceeds $2,500, be punished as prescribed under s. 943.20(3)(c)."

". . . (9) If any person obtains for himself, or any other person or dependents or both, assistance under this chapter on the basis of facts stated to the authorities charged with the responsibility of furnishing assistance and fails to notify said authorities within 10 days of any change in the facts as originally stated and continues to receive assistance based on the originally stated facts such failure to notify shall be considered a fraud and the penalties in sub. (1) shall apply. The negotiation of a check received in payment of such assistance by the recipient after any change in such facts which would render him ineligible for such assistance shall be prima facie evidence of fraud in any such case."

ported that she had four children living with her at the time of the application. The benefits to be received by her were calculated on that basis. Every six months thereafter "review forms" were filled out by the defendant. These review forms, which were signed by the defendant and filed with the Department of Public Welfare, were used to update the eligibility status of each recipient of aid. The form also contained a statement which informed the defendant of her duty to report any change in family income or conditions. These forms were on file for the years 1970 to 1977.

The initial application for aid submitted by the defendant and each review form filled out thereafter listed the defendant's only daughter as a member of her household. The defendant's three sons were also listed as members of the same household, and their status has not been questioned. The complaint and information alleged that the defendant's daughter began living with her grandmother outside the defendant's household sometime in 1970. Criminal prosecution of the defendant was not instituted until March, 1978. The complaint and information covered the period from April 1, 1972 through June 30, 1977. Between these dates, the defendant was alleged to have received $22,631.97 in AFDC payments with only three children actually living in her household. She was entitled to $18,977.97. Overpayment in the amount of $3,654 was alleged to have been fraudulently obtained.

The trial court did not make a specific finding as to the date the child moved out of the defendant's household, but stated that for the period of time charged in the information, the daughter lived with her grandmother or her father. Both parties on appeal agree that the child moved out of the defendant's household in 1970 and testimony to that effect was adduced at trial.

The defendant was placed on probation for three years and was ordered to pay restitution.

Sec. 49.12(9), Stats., incorporates the penalty provisions of sec. 49.12(1). Sec. 49.12(1) provides for increasing penalties depending on the amount of assistance unlawfully secured. Because the assistance obtained in this case exceeded $2,500, the defendant was charged with a felony. Sec. 939.74(1), Stats. 1977, requires that a felony prosecution be commenced within six years after "the commission thereof." As defined in the statute a prosecution is commenced "when a warrant or summons is issued, an indictment is found, or an information is filed."

We consider only whether sec. 49.12(9), Stats., is a continuing offense. The public defender asserted in his brief in the court of appeals that only a violation of sec. 49.12(9) was properly charged in the information and complaint and that a conviction premised on sec. 49.12(1) would violate due process. We do not determine the substantive effect of sec. 49.12(1) or the applicability of the continuing offense doctrine to that section. After reviewing the record, it is our conclusion that this case was prosecuted on the theory that the substantive violation of the statutes by the defendant was found in sec. 49.12(9), Stats.[2] Because we conclude that the defendant could be charged in 1978 with a violation of sec. 49.12(9), we need not address the applicability of sec. 49.12(1) to these facts.

The defendant argues that her failure to report a change in the status of her household was a completed crime in 1970. If this is so, the six year statute of limitations for felony prosecutions would act as a bar to the

---

[2] Although the State argues that both sections of the statutes were properly charged, the attorney for the state conceded on oral argument that at trial the "emphasis was on failure to report."

prosecution of this case in 1978. She reasons that when her daughter moved out of the household, it became her duty to report that fact as a change of circumstances within seven days thereafter.[3] At the expiration of the statutory grace period, all the elements of the offense occurred simultaneously and the statute of limitations commenced on that date. Her crime, it is argued, like the majority of criminal activity, was instantaneous. That is, it was a crime in which all the elements necessary for its completion occur within a relatively short period of time and the criminal objective is speedily obtained.

In contrast to the instantaneous nature of most crimes, a continuing offense is one which consists of a course of conduct enduring over an extended period of time. Note, *Statute of Limitations In Criminal Law: A Penetrable Barrier To Prosecution,* 102 Pa. L. Rev. 630, 641–642 (1954). Even if the initial unlawful act may itself embody all of the elements of the crime, the criminal limitations period commences from the most recent act. *Id.* at 642. Stated another way, the statute of limitations for a continuing offense does not begin to run until the last act is done which viewed by itself is a crime. *Duncan v. State,* 282 Md. 385, 388, 384 A.2d 456 (1978). Often a continuing offense may be distinguished by a duty to perform an act which the defendant fails to do. *Duncan v. State,* 282 Md. at 390.

The question whether a particular criminal offense is continuing in nature is primarily one of statutory interpretation. *Toussie v. United States,* 397 U.S. 112,

---

[3] In 1970, the grace period for reporting a change in circumstances was seven days. This time period was extended to ten days by amendment found in ch. 182, Laws of 1971; published March 4, 1972.

125 (1970), (White, J., dissenting) ; *United States v. Cores,* 356 U.S. 405, 408–409 (1958). The continuing offense doctrine is well established, and has been applied to encompass a wide variety of criminal activity including embezzlement, *see State v. Thang,* 188 Minn. 224, 246 N.W. 891 (1933) ; conspiracy, *see United States v. Kissel,* 218 U.S. 601 (1910) ; repeated failure to file reports, *see, Hanf v. United States,* 235 F.2d 710, 715 (8th Cir.), *cert. denied,* 352 U.S. 880 (1956) ; failure to report for induction, *United States v. Robinson,* 485 F.2d 1157 (3d Cir. 1973) ; theft by receiving, *State v. Reeves,* 574 S.W.2d 647 (Ark. 1978), *cert. denied,* 99 S. Ct. 2412 (1979), and the failure to make and keep records of controlled substances, *People v. Griffiths,* 67 Ill. App.3d 16, 384 N.E.2d 528 (1978), as well as others.[4]

In *Toussie v. United States,* 397 U.S. 112 (1970), it was held that a federal statute providing for the failure to register for the draft did not create a continuing offense. The Supreme Court recognized that it had in prior decisions applied the continuing offense doctrine in situations where the legislative purpose to create such an offense was clear.[5] The Supreme Court proposed the following criteria for determining whether the particular statute before the court creates a continuing offense.

"These considerations do not mean that a particular offense should never be construed as a continuing one.

---

[4] Other cases applying the doctrine are collected in Note, *Selective Service—Failing To Register Not A Continuing Offense,* 20 De Paul, 1., Rev. 284, 290–291 (1971); Mr. Justice White's dissent in *Toussie v. United States,* 397 U.S. 112, 134 (1970); and Note, *The Statute Of Limitations In Criminal Law: A Penetrable Barrier To Prosecution,* 102 Pa. L. Rev. 630, 641–642 (1954).

[5] Congress, acting soon after the decision in *Toussie,* amended the statute involved in that case to make the failure to register for the draft a continuing offense. *See,* 50 U.S.C. App. §462(d), (Supp. 1978).

They do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion or the nature of the crime involved is such that . . . [the legislature] must assuredly have intended that it be treated as a continuing one." *Toussie v. United States,* 397 U.S. at 115.

We believe that this analysis is the proper one to be followed in the present case.

We must first look to the terms the legislature used in defining the offense in question. The precise language of the reporting provision of sec. 49.12(9), Stats., states in part: "If any person obtains . . . assistance . . . on the basis of facts stated to the authorities charged with the responsibility of furnishing assistance and fails to notify said authorities within ten days of any change in the facts as originally stated and continues to receive assistance . . . such failure to notify shall be considered a fraud . . ." The statute by its very language contemplates that the crime is a continuing one. The failure to report a change in circumstances is but one element of the crime. The continued receipt of public assistance is another necessary element that must be established before criminal liability may be imposed. The crime continues until the unlawful receipt of assistance terminates or the change in family circumstances is reported.

The defendant asserts that the continued receipt of assistance is not an element of the offense charged in this case but is only relevant to the penalty to be imposed. This argument confuses the amount of assistance fraudulently received with the continued receipt of assistance. The amount fraudulently received does ultimately determine the penalty to be imposed, and it is not itself an element of the crime.[6] The continued re-

---

[6] *White v. State,* 85 Wis.2d 485, 492, 271 N.W.2d 97 (1978).

ceipt of public assistance on the other hand is the method by which the fraud is perpetuated and is an element of the offense. Likewise, the argument is made that the continued receipt of the welfare payments is merely evidence of the fraud. The statute provides that negotiation of the public assistance check is *prima facie* evidence of fraud. The continued receipt of public assistance is not the same as the negotiation of the check. While negotiation of the check demonstrates continued receipt, it also reflects an intent to defraud. The negotiation of the check and the receipt of assistance differ in that the former is a means of proving the latter.

Interpreting the failure to report changes in family conditions to be a continuing offense also accords with the penalty provisions of the statute. The penalties become gradationally more severe with the amount of assistance fraudulently received. Because the incremental amounts of public assistance tend to be small, the increasing penalty structure provided in the statute would be virtually meaningless if each receipt of benefits comprised a separate offense. Although the total number of offenses may be greater, under this interpretation, the only penalty which could be imposed in all but the most unusual circumstances would be that applicable for the increased benefits fraudulently received on one date.

We believe that the legislature is using the language "continues to receive" intended that the obligation to report a change in family conditions affecting eligibility remain unabated even after the grace period for reporting a change has expired. We think this case is closely analogous to the decision in *United States v. Cores*, 356 U.S. 405 (1958).[7] In that case a federal statute provid-

---

[7] The decision in *Toussie v. United States*, 397 U.S. at 120–121, did not limit the applicability of *United States v. Cores* to a question of venue in the continuing offense doctrine, as the defendant

ed that "[a]ny alien crewman who wilfully remains in the United States in excess of the number of days allowed" was guilty of a criminal offense. The Supreme Court held that the offense was a continuing one reasoning that "the crucial word 'remains' permits connotation other than continuing presence." *Id.* at 408. The Court found no finality to the crime existed until the alien crewman left the country. Likewise, the language "continues to receive" permits no other inference than that the crime continues during the period in which there has been a failure to notify of a change in circumstances and there is continued receipt of benefits.

This interpretation is consistent with this court's earlier decision in *Weber v. State,* 59 Wis.2d 371, 208 N.W. 2d 396 (1973). The defendant in that case was charged with violating sec. 49.12(9), Stats., and she argued that sec. 49.12(1) and (9) were unconstitutionally vague. This court in ruling the statutes clear on their face stated in part:

"No crime can occur until the seven days have elapsed without reporting a change of circumstances. Only the funds received thereafter would be the result of fraud and computed in the determination of the penalty . . . . Under the circumstances here, the *total amount of the aid received after* the seven-day period of grace would be computed in determining the penalty." *Weber v. State,* 59 Wis.2d at 383. (emphasis added).

The defendant's next argument in that case was the penalty imposed by the statute was dependent upon the vigilance of the public assistance authorities and by their

suggests. The Supreme Court in *Toussie* pointed out the fact that the statute involved in *Cores* was different from that presented to it and since the analysis of each case depends heavily on statutory interpretation, the cases were distinguishable. The fact that *Cores* raised a question of venue rather than the statute of limitations was a difference that was noted in *Toussie,* but this fact does not alter the substantive analysis of the cases.

delay she would be forced to incur higher penalties. In response, this court stated:

"Where, as here, the conduct is fraudulent and the penalty is *dependent in part upon the period during which the fraud is practiced,* the defendant's argument is bizarre indeed. . . . The argument mistakes the nature of the crime. The crime is fraud. It is a knowing misrepresentation of material facts. It was fully within the control of the defendant to promptly report any changes which would affect her receipt of assistance funds. The recipient had it fully within her power to comply with the law and to avoid any fraudulent conduct and penalties." *Weber v. State,* 59 Wis.2d at 384. (Emphasis added.)

The *Weber* case recognized that the crime of failing to report a change in family conditions to the public assistance authorities is one which by its very nature, involves a continuing course of conduct. The objective of one failing to report changed conditions is to continue to receive over time benefits for which the recipient is not entitled. The objective of the individual violating this statute is not to receive one additional payment in an amount in excess of that to which she is entitled. The objective is to receive a series of increased payments over time. In addition, the welfare laws depend heavily on voluntary compliance with the reporting requirements incorporated therein. Absent an effective means of ensuring voluntary compliance, those responsible for administering welfare benefits are severely handicapped in assuring that only those eligible receive benefits and that abuses are kept to a minimum. It is therefore in the nature of the crime itself that the failure to report changes in family conditions prevents prompt discovery by the authorities. *See,* Note, *Selective Service—Failure To Register Not A Continuing Offense,* 20 De Paul L. Rev. 284, 290 (1971).

The criminal statutes of limitations serve a number of functions but the primary purpose is to protect the accused from having to defend himself against charges of remote misconduct. A corollary purpose is to ensure that criminal prosecutions will be based on evidence that is of recent origin. It also assures that law enforcement officials will act promptly to investigate and prosecute criminal activity. This helps to preserve the integrity of the decision-making process in the trial of criminal cases.

None of these dangers are present in this case. The fraudulent activity continued through the years, and at least up until a year before this prosecution commenced. Thus, the criminal activity was not remote because the duty which was not performed was required until at least 1977, the last year charged in the information. Secondly, although the evidence of misconduct spans a number of years, the continuity of the illegal activity prevents the evidence from becoming "stale."

We recognize that a continuing offense should not be found unless the legislature speaks clearly. We believe, considering both the nature of the offense and the statutory language, there can be no other conclusion except that the legislature has so spoken to make sec. 49.12(9), Stats., a continuing offense.

*By the Court.*—The decision of the court of appeals is affirmed.