**Vernell HARRIS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 07–CT–917.**

District of Columbia Court of Appeals.

Argued Dec. 16, 2009.

Decided April 8, 2010.

M. Azhar Khan, for appellant.

John J. Woykovsky, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General for the District of Columbia, and Roslyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before KRAMER and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

KRAMER, Associate Judge:

Vernell Harris appeals from her conviction on four counts of welfare fraud. She contends that her prosecution was time-barred by the three-year statute of limitations and that her convictions were multiplicitous. We agree that one of the charges against her was multiplicitous and vacate accordingly. We do not, however, agree that her prosecution was time-barred, and we thus affirm the other convictions.

## I. Factual Background

Vernell Harris received food stamps from the Department of Human Services

("DHS") in the District of Columbia from April 1993 through February 2003, as well as Temporary Assistance for Needy Families ("TANF") benefits (government-provided benefits for persons with minor children) from May 1999 through February 2003. In order to obtain these benefits, Ms. Harris was required to file "re-certification forms" with DHS every six months and verify that she remained a District of Columbia resident by providing DHS with either an identification card or a letter from a roommate. Ms. Harris's benefits were temporarily discontinued in February 2000 after a letter was returned to DHS with a postal service sticker notifying of a forwarding address in Maryland. Ms. Harris, however, was able to reinstate her benefits by providing DHS with documentation of her District of Columbia residency, specifically a letter from a purported roommate in the District of Columbia and a utility bill for their residence. As a result, Ms. Harris's benefits continued uninterrupted until they were discontinued on February 28, 2003.[1]

At trial, the government presented three witnesses and produced several documents to establish that Ms. Harris fraudulently claimed District of Columbia residency for the purposes of District of Columbia benefits while she was a Maryland resident from May 2001 through February 2003. The witnesses included two DHS employees who had met with Ms. Harris between 2001 and 2003, as well as the apartment manager for one of Ms. Harris's Maryland residences. The documents produced included employee records and tax filings for two Maryland companies that employed Ms. Harris. Ms. Harris provided at least three different Maryland addresses to these employers between May 2001 and February 2003.

After a four-day jury trial, Ms. Harris was convicted of four counts of welfare fraud, including Count 1–welfare fraud "by means of failing to disclose her change of residence" from May 16, 2001 through February 28, 2003; Count 4–welfare fraud "by means of falsely stating her residence information" on March 28, 2002; Count 5–the same charge as Count 4 but for conduct on June 6, 2002, and Count 6–unlawful food stamp usage between May 16, 2001, and February 28, 2003.[2] Ms. Harris was sentenced to four consecutive sentences, including a sentence of one year of incarceration, execution of sentence suspended as to all but 15 days, for each of three counts, plus 180 days of incarceration with all but 15 days suspended for the fourth count, and five years of supervised probation.

## II. Legal Analysis

Ms. Harris contends that the trial court committed reversible error by failing to *sua sponte* strike some of the charges from the charging information as multiplicitous and barred by the three-year statute of limitations. We agree that one of the charges was multiplicitous, but we do not find any of the charges to be barred by the applicable statute of limitations.

### A. The Charge for Continuous Failure to Disclose Change of Address was Multiplicitous

 Ms. Harris argues the charges against her violated the Double Jeopardy

---

1. The record does not disclose why Ms. Harris's benefits were discontinued in February 2003, but Erica Hinton, a DHS employee, testified at trial that TANF benefits would be terminated only where DHS had a "concrete reason" to close the case.

2. The jury was unable to reach a decision on Counts 2 and 3, which charged Ms. Harris with two instances of providing false residence information on November 15, 2001.

Clause of the Fifth Amendment because the government charged her with welfare fraud as both a series of individual crimes and as one continuing offense. We agree. Because "[a]n illegal sentence-including a sentence for a conviction that should have merged with another conviction to avoid a double jeopardy violation-may be challenged at any time," *Carter v. United States,* 957 A.2d 9, 22 n. 19 (D.C.2008) (internal citation omitted), we remand for vacation of one of the multiplicitous charges and convictions despite the fact that Ms. Harris failed to object to the charging information at trial.[3]

■ We have held that the commission of a single fraud, *i.e.,* making one misrepresentation to DHS, which results in the receipt of multiple payments or benefits can be charged only as a single ongoing offense. *Blackmone v. United States,* 151 A.2d 191, 195 (D.C.1959).[4] We also have held, however, that a person can be charged with multiple fraud offenses where he or she makes multiple false representations to the government. *Abdulshakur v. District of Columbia,* 589 A.2d 1258, 1267 (D.C.1991).[5] Thus, it is not inherently problematic for a person charged with welfare fraud to be charged with both a continuing offense and a series of individual offenses, so long as the offenses are based on different conduct and thus constitute "separate criminal acts."

With this framework in mind, we agree that Count 1 was multiplicitous with Counts 4 and 5.[6] All three of these charges were based on violations of D.C.Code § 4–218.01(a) (2001), which provides in pertinent part:

> Any person who, with the intent to defraud, by means of *false statement, failure to disclose information,* or impersonation, or by other fraudulent device, obtains or attempts to obtain or any person who knowingly aids or abets such person in the obtaining or attempting to obtain: (1) any grant or payment of public assistance to which he is not entitled; ... shall be guilty of a misdemeanor and shall be sentenced to pay a fine of not more than $500, or to imprisonment not to exceed one year, or both. (Emphasis added).

Count 1 charged Ms. Harris with a continuing offense, specifically the failure to disclose her change of address between

---

3. *See also* Super. Ct.Crim. R. 35(a) ("The Court may correct an illegal sentence at any time...."); *Brown v. United States,* 795 A.2d 56, 63 (D.C.2002) ("[I]n the interests of justice, a motion to correct an illegal sentence should be considered without regard to cause and prejudice requirements. In the present case, therefore, Brown's failure to raise his double jeopardy challenge to the legality of his sentence at the time of his sentencing or on direct appeal does not bar our consideration of his claim on its merits.").

4. In *Blackmone,* the defendant made one misrepresentation to the Department of Public Welfare, and thereafter received thirty-six welfare payments based on that single misrepresentation. We held that "the offense charged [there] was not a series of independent acts, but a single general plan or scheme to defraud the [government]." *Id.*

5. In *Abdulshakur,* the defendant "executed and presented to DHS representatives three separate documents, each of which contained [] separate false representations regarding the continued receipt of her salary...." *Id.* at 1259. There, we held that "[a]n offense was complete whenever [the defendant] submitted a false statement.... Although her scheme to defraud the District government was in a sense continuous-she made repeated misrepresentations over a period of several months-a separate statutory offense was committed each time she filed a false application or monthly statement." *Id.* (footnote omitted).

6. Ms. Harris also alleges that Count 1 was multiplicitous with Counts 2 and 3, but we decline to address these counts since they were ultimately dismissed.

May 16, 2001, and February 28, 2003. Counts 4 and 5, on the other hand, were based on individual incidents of providing a false address to DHS on March 28, 2002 and June 2, 2002 respectively. "There is [ ] no double jeopardy bar to 'separate and cumulative punishment for separate criminal acts,' even if those separate acts do happen to violate the same criminal statute," *Ellison v. United States*, 919 A.2d 612, 614 (D.C.2007) (quoting *Brown, supra* note 3, 795 A.2d at 63), but here we do not find "separate criminal acts."

> Where a defendant has been convicted of two violations of the same statute, we have employed a "fact-based analysis" to determine whether "separate criminal acts have occurred." For purposes of this fact-based merger analysis, criminal acts are considered separate when there is an appreciable length of time between the acts that constitute the two offenses, or when a subsequent criminal act was not the result of the original impulse, but a fresh one.

*Id.* at 615 (quoting *Sanchez–Rengifo v. United States*, 815 A.2d 351, 354 (D.C. 2002)).

■ Here, when Ms. Harris provided a false address to DHS on March 28 and June 2, the bases for Counts 4 and 5, she simultaneously failed to disclose her correct address, the basis for Count 1. These criminal acts were thus inextricably intertwined, and we cannot find an "appreciable length of time" between these simulta-neous acts or a separate criminal "impulse" to establish sufficient separation between the acts. *Id.*[7] The court's failure to *sua sponte* strike either Count 1 or Counts 4 and 5 was thus error. The government urges us to apply plain error review because appellant failed to object to the multiplicitous charging at trial. This court, however, has previously "not refrained from reaching merger issues which become apparent for the first time on appeal, ... even if not specifically raised by the appellant." *Brown, supra* note 3, 795 A.2d at 62 (citation omitted). This court has further held that, "[w]here there are duplicate convictions for the same offense, one or more must be vacated in order that only one conviction and sentence remains for a single offense." *Sanchez–Rengifo, supra*, 815 A.2d at 354. Accordingly, we remand with instructions to vacate either Count 1 or Counts 4 and 5.

**B. The Other Multiplicity Claims Lack Merit**

■ Ms. Harris's other claims of multiplicity fail. Counts 4 and 5 were not multiplicitous as they were based on two independent incidents of fraud, namely Ms. Harris's submissions of false documents to DHS on two separate occasions. As we noted above, these facts are squarely controlled by our decision in *Abdulshakur* that a person who makes multiple attempts to fraudulently obtain benefits may be convicted on multiple counts. *Supra*, 589 A.2d at 1258. Ms. Harris was also

7. We note that Ms. Harris could have been properly charged with welfare fraud for a continuing failure to disclose her change of address to DHS if the period of time had not included March 28 and June 6, 2002, the dates on which Ms. Harris made misrepresentations for which she was prosecuted through Counts 4 and 5. *See Abdulshakur, supra*, 589 A.2d at 1268–69 n. 19 (citing *John v. State*, 96 Wis.2d 183, 291 N.W.2d 502 (1980) for the proposition that a continuing failure to disclose can be charged as one ongoing offense).

This is so because there could be a failure to disclose a change of address without the provision of a false statement if, for example, a benefits recipient moved into Maryland for a period shorter than six months, but was once again a District of Columbia resident by the time of her DHS re-certification. These are not the facts of this case and, in any event, it is not the role of this court to re-write a charging information or otherwise correct the prosecutor's error.

properly charged with the continued unlawful use of food stamps pursuant to D.C.Code § 4–218.05(a).[8] It is irrelevant that the charged offense occurred within the same time period as Counts 1, 4, and 5 because unlawful use of food stamps is a separate and different offense from welfare fraud. According to the "elements-based rule of statutory construction [we use] in determining whether offenses merge," "[i]f each offense contains at least one element which the other does not, there is a presumption that the legislature does not intend that the offenses merge." *Malloy v. United States*, 797 A.2d 687, 691 (D.C.2002).[9] Here, § 4–218.01(a) requires the element of "a false statement" or "failure to disclose information" which § 4–218.05(a) does not, and § 4–218.05(a) requires the use of either "food stamp coupons or access devices" which § 4–218.01(a) does not. The presumption of separate offenses established by the different elements can only "be overcome by a clear indication of contrary legislative intent," *id.* (quoting *Missouri v. Hunter*, 459 U.S. 359, 367–68, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)), which Ms. Harris does not present. Thus, we find no error.

## C. The Charges were Not Barred by the Statute of Limitations

■ Ms. Harris also argues that her prosecution for Counts 1 and 4 were barred by the expiration of the three-year statute of limitations.[10] Because Ms. Har-

ris did not raise the statute of limitations issue at trial, we review only for plain error. *See Marquez v. United States*, 903 A.2d 815, 817 (D.C.2006). Count 1 was based on Ms. Harris's conduct from May 15, 2001 through the day her benefits were discontinued, February 28, 2003. Count 4 was based on Ms. Harris's conduct on March 28, 2002, namely her provision of a false address on a re-certification form during a visit to DHS. Prosecution was initiated against Ms. Harris on April 19, 2005. D.C.Code § 23–113 provides the relevant statute of limitations:

> (6) A prosecution for a felony or a misdemeanor may be brought within three (3) years:
>
> &ast; &ast; &ast;
>
> (B) after a fraud or breach of fiduciary trust has been, or reasonably should have been, discovered for any completed offense based on that fraud or breach of fiduciary trust; even if barred by the provisions of paragraphs (4) and (5)....

Since Ms. Harris did not present her statute of limitations argument at trial, there is no record of when the fraud was discovered or any proffer of what would be a reasonable time for discovery of such fraud.

■ The burden was on Ms. Harris to prove her affirmative statute of limitations defense. Accordingly, we will not hold the failure to produce the date of

---

**8.** D.C.Code § 4–218.05(a) provides in pertinent part:

> Any person who knowingly uses, transfers, acquires, alters, purchases, possesses, or transports one or more food stamp coupons or access devices in a manner not authorized by the Food Stamp Act of 1964, approved August 31, 1964 (78 Stat. 703; 7 U.S.C. § 2011 et seq.) ("Food Stamp Act"), or by regulations issued pursuant to that Act, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined

no more than $ 1,000 or imprisoned for not more than 180 days, or both.

**9.** *See generally Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (establishing the elements-based rule for determining when offenses merge).

**10.** Count 5 clearly survives the three-year statute of limitations, and thus is not challenged, because the fraud charged therein occurred on June 2, 2002, and this prosecution was initiated on April 19, 2005.

discovery against the government, especially here, where a reasonable inference is that the fraud was not discovered until February 28, 2003, when Ms. Harris's benefits were discontinued for "a concrete reason." There is no question that Count 1 fell within the statute of limitations. Count 1 charged a continuing offense, and the statute of limitations will not begin to run for a continuing offense until the offense is complete. *See Abdulshakur, supra,* 589 A.2d at 1268–69.[11] In this case, the continuing offense of Count 1 ended on February 28, 2003–a date clearly within the three-year statute of limitations. With regard to Count 4, prosecution would not have been time-barred if the fraud was in fact discovered on February 28, 2003. Indeed, even if the fraud involved in Count 4 was discovered a mere twenty-two days after it was committed, a "reasonable" time for discovery, this prosecution would not have been time-barred. Thus, we do not find error, much less plain error, in the trial court's failure to *sua sponte* raise a possible statute of limitations issue with the prosecution.

### III. Conclusion

Because we find Count 1 multiplicitous of Counts 4 and 5, we remand with instructions to vacate either Ms. Harris's conviction on Count 1 or her convictions on Counts 4 and 5. We do not find Ms. Harris's convictions on Count 1 or Count 4 barred by the statute of limitations, so the trial court may choose which conviction(s) to vacate.

*Affirmed in part, remanded in part.*

---

11. *See also People v. Keehley,* 193 Cal.App.3d 1381, 1383, 239 Cal.Rptr. 5, 6 (1987); *John v. State,* 96 Wis.2d 183, 188, 291 N.W.2d 502, 505 (1980); Note, *Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution,* 102 U. Pa. L.Rev. 630, 642 (1954) (discussing the rule that criminal limitations period commences from the most recent act).